Donald Lorrin CRONN, Petitioner,

v.

Ron C. BURKHART, Warden, Federal
Correctional Institution, Fort
Worth, Texas, Respondent.

No. 4:93–CV–167–A.

United States District Court,
N.D. Texas,
Fort Worth Division.

Aug. 26, 1993.

Billy Ray Snow, Bill Snow, Fort Worth, TX, for plaintiff.

Donald Lorrin Cronn, pro se.

Howard Alan Borg, U.S. Atty's Office, Ft Worth, TX, for defendant.

## MEMORANDUM OPINION and ORDER

McBRYDE, District Judge.

Came on for consideration the above-styled and numbered action wherein Donald Lorrin Cronn ("Cronn") is petitioner and Ron C. Burkhart, Warden, Federal Correctional Institution, Fort Worth, Texas, is respondent. This is a petition for writ of *habeas corpus* filed pursuant to 28 U.S.C. § 2241. On July 7, 1993, the United States Magistrate Judge issued his findings, conclusions, and recommendations and ordered that Cronn and respondent have until July 28, 1993, to make

objections thereto. On July 27, 1993, Cronn filed objections.[1] Respondent has not responded to the objections, except by the response he made through the oral argument of his counsel at the hearing held August 19, 1993.

At issue is the conduct of the United States Parole Commission ("Commission") in taking steps, after the running of Cronn's sentence of confinement was completed, to cause his parole to be revoked, the time he had spent on parole to be forfeited, and his recommittal to serve further imprisonment time. The court has concluded that the revocation was not legal, that the writ should be granted, and that Cronn should be ordered released from custody.

## I.

### Undisputed Facts

On November 9, 1982, Cronn was sentenced by the United States District Court for the Northern District of Texas, Dallas Division, to a term of seven years of confinement to be followed by five years of probation. After an appeal from his conviction, he started serving his sentence of imprisonment on August 27, 1984. Exhibits to Response to Writ of Habeas Corpus, Ex. "G." Cronn was released on parole on December 23, 1987, with 1340 days remaining to be served on his original seven-year sentence, i.e. his full term release date was August 24, 1991. Id. Ex. "B." On January 17, 1991, after Cronn was indicted by a Dallas County, Texas, grand jury on charges of violating the Texas Securities Act, Cronn's probation officer recommended that a parole violator warrant be issued. Id. Ex. "D." On January 18, 1991, the Commission issued such a warrant as a detainer while Cronn was in state custody. Id. Ex. "E", "F", and "G." The parole violation, referred to as "Charge # 1", charged by the application for the warrant was:

> # 1 FRAUDULENTLY ENGAGING IN SALE AND OFFER FOR SALE OF FALSE SECURITIES (5 INDICTMENTS)

On or about January 18, 1991, Cronn was arrested at Dallas County, Texas Sheriff's Department on the above charge (5 separate indictments). Cronn is currently being held in Dallas County Jail. Information contained in USPC telephone slip dated January 17, 1991, and indictments.

Id. Ex. "G." Before the warrant was executed, the application was supplemented on February 8, 1991, with a charge of "ASSOCIATION WITH PERSON HAVING A CRIMINAL RECORD", referred to in the supplement as "Charge # 2", in violation of his conditions of release. Id. Ex. "I."

On April 3, 1991, the warrant was executed by retaking Cronn into federal custody upon his release by state authorities. On April 18, 1991, Cronn participated in a preliminary interview with a representative of the Commission, at which time he denied the two charges. The interviewing officer advised Cronn that his recommendation would be that there was probable cause to believe that Cronn had committed the parole violation described by Charge # 1; but, the interviewing officer found "no probable cause" as to Charge # 2. Id. Ex. "L" at 4–5. At the time of the preliminary interview, Cronn signed a form requesting that a revocation hearing be held; and, the hearing was scheduled to be held in June 1991. Petitioner's Motion for Writ of Habeas Corpus, for Petitioner's Release and for Bond Hearing and Brief in Support Thereof (filed 3/26/93) at 3; Exhibits to Response to Writ of Habeas Corpus, Ex. "L" at 2.

On May 3, 1991, the Commission withdrew the warrant of January 18, 1991, and ordered that Cronn be released, that his terms of supervision be reinstated, and that the warrant be held in abeyance pending disposition of the state charges. Exhibits to Response to Writ of Habeas Corpus, Ex. "M" at 1. The Notice of Action by the parole commission advised that the "following parole action was ordered":

> Release forthwith. Reinstate to supervision. Withdraw warrant dated January 18, 1991. Place said warrant in abeyance

---

1. Cronn's objections were, in effect, amended by a document he filed July 29, 1993. The court is treating the July 29 filing as the controlling document.

pending disposition of the state charge for fraudulently engaging in the sale and offer for sale of false securities (5 indictments). *Id.* at 2. The notice went on to advise that "The Above Decision is Not Appealable." *Id.* No revocation hearing was held. Cronn was released to serve, on parole, the rest of his seven-year sentence of confinement.

On August 24, 1991, the running of the time for Cronn's November 19, 1982, seven-year sentence of confinement was complete. On that date Cronn started serving his five-year term of probation. Petitioner's Traverse to Respondent's Supplemental Response to Petition for Writ of Mandamus, Ex. "A."

In April 1992 Cronn was convicted of the Dallas County charges to which Charge # 1 related. On August 18, 1992, the Commission prepared a "Supplement to Warrant Application Issued 1/18/91." Exhibits to Response to Writ of Habeas Corpus, Ex. "P." This document stated the following charge:

Re: # 1 *FRAUDULENTLY ENGAGING IN SALE AND OFFER FOR SALE OF FALSE SECURITIES*

On or about 4/3/92, Cronn appeared in the 204th District Court of Dallas County and was found guilty of the above cited offense: said offense having occurred on or about 3/23/89. On or about 4/3/92, Cronn was sentenced to five (5) years confinement in the Texas Department of Corrections: imposition of sentence suspended and Cronn placed on five (5) years probation, $300 fine and $72.50 in court costs. Information contained in letter dated 8/11/92 by USPO Fitzgerald and Judgment and Probation, Case No. F91–00119–TO.

*Id.* Another supplement was issued October 30, 1992, which was virtually identical to the one issued August 18, 1992, with a change in the wording related to the sentence Cronn had received in the Dallas County criminal action. *Id.* Ex. "Q." Yet another supplement was issued January 8, 1993, adding "Charge # 3", which charged as a violation *"DRIVING WHILE INTOXICATED"*, referring to a conviction of a DWI offense that occurred in August 1989.[2] *Id.* Ex. "T."

On January 14, 1993, the Commission put the warrant in the hands of the United States Marshal for execution. *Id.* Ex. "U." On February 1, 1993,[3] the warrant was executed by another retaking of Cronn into federal custody.[4] A revocation hearing was held on April 6, 1993, as a result of which the panel recommended revocation of Cronn's parole based on findings that Cronn did the things charged by Charges # 1 and # 2. *Id.* Ex. "V" at 2. Cronn's case was then reviewed by the Acting Regional Commissioner, who concurred with the panel. On April 27, 1993, based on the findings mentioned above, the Commission ordered Cronn's parole revoked. Supplemental Response to Petition for Writ of Habeas Corpus, Ex. "Y." Cronn was denied credit for any time he had spent on parole except the April 3, 1991, to May 3, 1991, time period, when he was confined by reason of the first execution of the warrant. *Id.* Cronn remains in custody at this time.

II.

*The Action Taken by the Magistrate Judge*

The Magistrate Judge, to whom this action was referred for findings and recommendations, recommended that the writ be denied, stating as his recommendation on that subject:

---

2. This January 8, 1993, supplement is not at issue in this action. According to Cronn's written objections filed July 27, 1993, the Commission acknowledged that it did not have the authority on January 8, 1993, to supplement the warrant application with a new violation charge. Petitioner's Written Objections to the Proposed Findings and Recommendations of the United States Magistrate Judge at 3.

3. Petitioner says that the warrant was executed January 28, rather than February 1. The exact date cannot be determined from the record.

4. Petitioner notes that the warrant that was executed in early 1993 was signed by Parole Commissioner Reyes, who had died in December 1992, before the warrant was put in the hands of the Marshal for execution. Petitioner's Motion for Writ of Habeas Corpus, for Petitioner's Release and for Bond Hearing and Brief in Support Thereof (filed 3/26/93), at 5.

It is recommended that this Petition for Writ of Habeas Corpus be denied because the United States Parole Commission did comply with its rules and regulations governing the issuances and holding in abeyance of parole violator warrants.

Findings, Conclusions, and Recommendations of the United States Magistrate Judge (signed July 7, 1993), at 9.

■ Cronn made timely objections to the Magistrate Judge's recommendations.[5] Because objection has been filed, the court makes a *de novo* determination of the contested portions of the Magistrate Judge's findings, conclusions, and recommendations. *United States v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *Nettles v. Wainwright,* 677 F.2d 404, 409 (5th Cir. Unit B May 1982).

### III.

### *Cronn's Complaints*

Cronn acknowledges that the January 18, 1991, parole violator warrant was timely issued prior to his full term release date. Further, Cronn would concede that, if the warrant had not already been executed, the warrant could have been executed after his full term release date. *See Anderson v. United States,* 898 F.2d 751, 752 (9th Cir.1990). Cronn's arguments are that (a) he was entitled to a timely revocation hearing after the warrant was executed by retaking him into custody on April 3, 1991, (b) after the warrant was thus executed, it could not be withdrawn and reexecuted, and (c) in no event was the action taken against him by the Commission after his term of confinement had run legal.

### IV.

### *Pertinent Case, Statutory, and Regulatory Authority*

The revocation of parole is not a part of a criminal prosecution, with the consequence that "the full panoply of rights due a defendant in such a proceeding does not apply to parole revocation." *Morrissey v. Brewer,* 408 U.S. 471, 480, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). However, that does not mean that a parolee does not have valuable rights that must be honored by the government. The Supreme Court put it as follows in *Morrissey:*

> We see, therefore, that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a "grievous loss" on the parolee and often on others. It is hardly useful any longer to try to deal with this problem in terms of whether the parolee's liberty is a "right" or a "privilege." By whatever name, the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment. Its termination calls for some orderly process, however informal.

*Id.* at 482, 92 S.Ct. at 2601. Society, as well as the parolee, is entitled to assurances that parolees will receive fair treatment in parole revocation matters, for, as the Court said in *Morrissey:*

> And society has a further interest in treating the parolee with basic fairness: fair treatment in parole revocations will enhance the chance of rehabilitation by avoiding reactions to arbitrariness.

*Id.* at 484, 92 S.Ct. at 2602.

The Supreme Court treated execution of a parole violator warrant as being the significant event that triggers the parolee's due process rights, saying that:

> [D]ue process would seem to require that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient *after arrest* while information is fresh and sources are available.

*Id.* at 485, 92 S.Ct. at 2602 (emphasis added). And, when discussing the due process requirement relative to the timing of the revocation hearing, the Court again emphasized that the retaking of the parolee into custody is the significant event that requires adher-

---

**5.** The Magistrate Judge made the further recommendation that bond not be set in this action pending final resolution of the *habeas corpus* petition. Cronn objected to that recommendation as well, but the decision of the court to grant the writ eliminates the need to deal with that issue.

ence to the due process standards mandated by the Court, saying, "[t]he revocation hearing must be tendered within a reasonable time after the parolee is taken into custody." *Id.* at 488, 92 S.Ct. at 2604.

When the Supreme Court revisited the problem in *Moody v. Daggett,* 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976), it again emphasized the importance of execution of the warrant, *i.e.,* the arrest and retaking of the parolee, holding that a parolee is not entitled to a prompt parole revocation hearing where a parole warrant is issued and lodged with the institution of his confinement as a detainer *but is not executed.* The taking of the parolee into custody was again viewed to be the triggering event. The Court stated the issue and its resolution as follows:

> The issue before us here, however, is not whether a *Morrissey*-type hearing will ever be constitutionally required in the present case, [footnote omitted] but whether a hearing must be held at the present time, before the parolee is taken into custody as a parole violator. We hold that there is no requirement for an immediate hearing.

*Id.* at 86, 97 S.Ct. at 278. The retaking of the parolee pursuant to the parole violator warrant brings about "the loss of liberty" that necessitates compliance by the government with the *Morrissey* due process standards. *Id.* at 86–87, 97 S.Ct. at 278–79. The Court made quite clear the importance of the distinction between "issuance" and "execution" of a warrant, saying:

> Petitioner's present confinement and consequent liberty loss derive not in any sense from the outstanding parole violator warrant, but from his two 1971 homicide convictions. Issuance of the warrant and notice of that fact to the institution of confinement did no more than express the Board's intent to defer consideration of parole revocation to a later time. Though the gravity of petitioner's subsequent crimes places him under a cloud, issuance of the warrant was not a determination that petitioner's parole under his 1962 rape conviction will be revoked; the time at which the Commission must make that de-

cision has not yet arrived. With only a prospect of future incarceration which is far from certain, we cannot say that the parole violator warrant has any present or inevitable effect upon the liberty interests which *Morrissey* sought to protect. Indeed, in holding that "[t]he revocation hearing must be tendered within a reasonable time after the parolee is taken into custody," *Morrissey,* 408 U.S. at 488 [92 S.Ct. at 2603–04], we established execution of the warrant and custody under that warrant as the operative event triggering any loss of liberty attendant upon parole revocation. This is a functional designation, for *the loss of liberty as a parole violator does not occur until the parolee is taken into custody under the warrant.* Cf. 18 U.S.C. § 4206; 18 U.S.C. § 4213(d) (1976 ed.).

*Id.* at 86–87, 97 S.Ct. at 278–79 (emphasis added). And:

> Accordingly, and without regard to what process may be due petitioner before his parole may be finally revoked, we hold that he has been deprived of no constitutionally protected rights simply by issuance of a parole violator warrant. The Commission therefore has no constitutional duty to provide petitioner an adversary parole hearing *until he is taken into custody as a parole violator by execution of the warrant.*

*Id.* at 89, 97 S.Ct. at 280 (emphasis added).

The Fifth Circuit anticipated the Supreme Court's holding in *Moody* when it held in *Cook v. United States Attorney General,* 488 F.2d 667 (5th Cir.), *cert. denied,* 419 U.S. 846, 95 S.Ct. 81, 42 L.Ed.2d 75 (1974), that "issuance" of a warrant causes quite a different result from "execution" of the warrant. Distinguishing between those two events, the Fifth Circuit said:

> While a parole violators warrant must be *issued* within the maximum term of the sentence in accordance with 18 U.S.C.A. § 4205 [footnote omitted] it need not be executed during this period. Instead, as we have many times declared, the warrant may be held in abeyance while the parolee serves sentence under an intervening conviction (the occurrence of which prompted the issuance of the violators warrant) and

may then be executed following completion of this intervening sentence . . . .

*Id.* 670–71. The Court went on to explain what is meant by "execution" of a federal violator warrant, saying:

A parole violators warrant is executed when its command is carried out—that is when the parolee is retaken and returned to federal custody pursuant to it . . . .

*Id.* at 671. And, the court noted that execution of the warrant is the operative factor:

Both statute and precedent confirm that *execution* of the warrant is the operative factor in triggering the availability of the revocation hearing . . . .

*Id.* In explaining why its holding was consistent with the requirements of *Morrissey*, the Fifth Circuit said:

*Morrisey* [sic], in fact, recognized that "[t]he revocation hearing must be tendered within a reasonable time after the parolee is taken into custody." 408 U.S. at 488, 92 S.Ct. at 2603, 33 L.Ed.2d at 498. It is important to realize, however, that in *Morrisey* [sic], the Court was confronted with parolees who had been returned to prison under *executed* warrants—not under new intervening convictions for admitted, serious crimes.

*Id.* at 673–74.

Also putting emphasis on the distinction between "issuance" and "execution" of a parole violator warrant are the cases dealing with the consequences of an unintended execution of such a warrant. In *Chandler v. Barncastle,* 919 F.2d 23 (5th Cir.1990), the warrant was executed, *i.e.* the parolee was taken into custody, in violation of instructions accompanying the warrant. When delivered to the United States Marshal for handling, the warrant was accompanied by instructions that specifically directed the Marshal not to execute the warrant if the parolee was already in state custody. In disregard, or in ignorance, of those instructions, the Marshal arrested the parolee and took him into federal custody pursuant to the warrant. The Fifth Circuit said in conclusion that:

This Court follows the Tenth Circuit decision in *McConnell v. Martin* [896 F.2d 441 (1990) ] in holding that a parole viola-

tor warrant is not validly executed if the attempted execution is contrary to the Parole Commission's instructions, and a warrant that was never validly executed can be withdrawn. The warrant for Chandler was not validly executed on August 9, 1982 in that the specific directions on the warrant stated that it should not be executed if the parolee was in state custody. Consequently, the Parole Commission had the authority to release Mr. Chandler from the custody of the warrant, have the warrant replaced as a detainer against him, and suspend the running of his parole violator term . . . .

*Id.* at 27. The complaint of the parolee in *Chandler* was that the Parole Commission had no authority to withdraw the warrant after it had been executed by his arrest and then to use it as a detainer, with the consequence that a parole revocation based on a hearing held two and one-half years later was ineffective. The parolee's contention, and the district court's finding that resulted in the order of the district court that the parolee's writ of *habeas corpus* should be granted, were described by the Court as follows:

On January 25, 1989, Chandler petitioned for a writ of habeas corpus in the United States District Court of the Northern District of Texas. Chandler argued that the federal sentence began running upon execution of the parole violator warrant in August 1982 and that he should receive credit for that time served. The district court adopted the findings, conclusions, and recommendations of the magistrate and ordered that Chandler's sentence be recalculated with the finding that the federal sentence commenced running without interruption from the date of the execution of the parole violator warrant . . . .

*Id.* at 25. There is no suggestion in the Fifth Circuit's opinion that it would not have affirmed the district court if the warrant had been *properly executed* in the first instance.

Another case involving an invalidly executed parole violator warrant is *Sinclair v. Henman,* 986 F.2d 407 (10th Cir.1993), *petition for cert. filed,* (U.S. May 20, 1993) (No. 92–8959). In that case, the warrant was execut-

ed on June 25, 1982, in violation of instructions accompanying the warrant that it not be executed. Thereafter, in January 1982, the Commission issued a new parole violator warrant as a detainer. The new warrant was executed by the arrest of the parolee on May 27, 1987, following which a parole revocation hearing was held and the parole was revoked. The parolee complained that the Commission unlawfully denied him a prompt parole revocation hearing after execution of the January 1982 warrant. The importance the Tenth Circuit attached to proper execution of the warrant is illustrated by the following language in the opinion:

> Whether or not the Parole Commission unlawfully denied Petitioner a revocation hearing after service of the January 4, 1982 parole violator warrant turns on whether the June 25, 1982 execution of the warrant was valid. In order for the execution to be valid, the Marshal's Service must have executed the warrant according to Parole Commission instructions. If the execution was valid, the Parole Commission had a legal obligation to hold a parole revocation hearing within sixty days of service. *Still v. United States Marshal,* 780 F.2d 848, 851–52 (10th Cir.1985). If the execution was invalid because the Marshal's Service did not follow the instructions of the United States Parole Commission, a parole revocation hearing was not required....

*Id.* at 409.

The controlling statute and regulations are consistent with, and mandate, the distinction the courts have recognized between "issuance" and "execution" of a parole violator warrant. In response to the Supreme Court's rulings in *Morrissey,* Congress enacted the Parole Commission and Reorganization Act of 1976, 18 U.S.C. §§ 4201–4218 ("Act").[6] The Act authorizes the suspension of the issuance of a warrant under certain circumstances, but contains no authorization for the withdrawal or suspension of a warrant after it has been executed. On the subject of the withholding of issuance of a

warrant after a parole violation has occurred, Congress provided:

> (a) If any parolee is alleged to have violated his parole, the Commission may—
>
> . . . .
>
> (2) issue a warrant and retake the parolee as provided in this section.
>
> (b) Any ... warrant issued under this section shall be issued by the Commission as soon as practicable after discovery of the alleged violation, except when delay is deemed necessary. Imprisonment in an institution shall not be deemed grounds for delay of such issuance, except that, in the case of any parolee charged with a criminal offense, issuance of a summons or warrant may be suspended pending disposition of the charge.

18 U.S.C. § 4213(a) & (b). Congress defined "execution" of a warrant as follows:

> (d) Any officer of any Federal penal or correctional institution, or any Federal officer authorized to serve criminal process within the United States, to whom a warrant issued under this section is delivered, shall execute such warrant by taking such parolee and returning him to the custody of the regional commissioner, or to the custody of the Attorney General, if the Commission shall so direct.

18 U.S.C. § 4213(d).

The Act then goes on to outline the procedures that must be followed after the warrant has been executed, which are consistent with the directives of *Morrissey* that timely procedural steps be taken once the parolee has been retaken. 18 U.S.C. § 4214.

The interpretation the Commission has placed on the suspension language of § 4213(b) is found at § 2.44(b) of its regulations, which provides:

> (b) Any ... warrant under this section shall be issued as soon as practicable after the alleged violation is reported to the Commission, except when delay is deemed necessary. Issuance of a ... warrant may be withheld until the frequency or seriousness of violations, in the opinion of the

---

**6.** 18 U.S.C. §§ 4201–4218 were repealed effective October 12, 1984, but continued to be applicable for ten years to individuals who committed offenses prior to November 1, 1987. *See* Pub.L. 98–483, Title II, § 218(a)(5), Oct. 12, 1984, 98 Stat. 2027.

Commission, requires such issuance. In the case of any parolee charged with a criminal offense and awaiting disposition of the charge, issuance of a ... warrant may be withheld, a warrant may be issued and held in abeyance, or a warrant may be issued and a detainer may be placed.

28 C.F.R. § 2.44(b). Thus, the Commission expanded the words Congress used by adding that after a warrant has been issued it can be held in abeyance. Even if one were to assume that the expansion was legitimate, there is no doubt that the Commission did not, and could not, interpret the "suspension" authority given to it by Congress to include the withdrawal and holding in abeyance of a warrant that *already had been executed.* The regulation provides that issuance of a warrant may be withheld, or a warrant may be issued and held in abeyance, or a detainer placed, but does not allow disposition of the charges to be held in abeyance after a warrant has been executed.

The regulations take note in other important ways between "issuance" and "execution" of a warrant. As examples:

(a) Any officer of any Federal correctional institution or any Federal officer authorized to serve criminal process within the United States, to whom a warrant is delivered *shall execute such warrant by taking the parolee and returning him to the custody of the Attorney General.*

. . . .

(c) If execution of the warrant is delayed pending disposition of local charges, for further investigation, or for some other purpose, the parolee is to be continued under supervision by the probation officer until the normal expiration of the sentence, or until the warrant is executed, whichever first occurs. Monthly supervision reports are to be submitted, and the parolee must continue to abide by all the conditions of release.

28 C.F.R. § 246(a) & (c) (emphasis added).

(d) A parolee retaken on a warrant issued by the Commission shall be retained in custody until final action relative to revocation of his release, unless otherwise

ordered by the Regional Commissioner under § 2.48(e)(2). . . .

28 C.F.R. § 2.49(d).

Consistent with the provisions of the Act and the regulations promulgated thereunder, the Sixth Circuit held in *Barrier v. Beaver,* 712 F.2d 231 (6th Cir.1983) that:

The statutory authority of the Parole Commission is *not* such, however, to allow it to continue to supervise the parolee's conduct in that interim period prior to the hearing. During that time, after the expiration of the parolee's maximum term, the parolee is no longer subject to the "legal custody and ... control of the Attorney General." 18 U.S.C. section 4210(a). Therefore, an additional parole violation warrant may not be issued during the interim. In this sense, then, we agree with the Seventh Circuit's recent conclusion in *Martin v. Luther,* [689 F.2d 109 (7th Cir. 1982)] *supra,* that the limitation on the Parole Commission's authority imposed by section 4210 is a 'temporal jurisdictional limitation'. As stated by the *Martin v. Luther* court, 689 F.2d at 114:

. . . .

... [T]he supervisory authority of the Commission over the parolee—the time period that the parolee's conduct is subject to government scrutiny—is limited by the term of his prison sentence. Section 4210(b) does not require the Parole Commission to render its decision on the merits of an alleged parole violation ... prior to the expiration of his maximum term ... but, rather, *requires the Commission to commence the proceedings within that time frame by issuing either a violator warrant or summons.*

*Id.* at 237 (emphasis added). In *Barrier,* the Sixth Circuit rejected the Commission's argument that the Commission is authorized to regulate a parolee's conduct, and issue new warrants, until a final adjudication of the violator warrant is had. *Id.* at 238. The court went on to explain Congress' reason for allowing post-expiration hearings, saying:

Congress, in providing authority for the Parole Commission's post-expiration hearing on outstanding violator warrants, did not intend, however, to extend supervision

of the parolee in the manner advocated by the respondent; rather, the Congress merely sought to insure that parole revocation decisions were not accorded hasty treatment—to the detriment of all concerned—because of an impending term expiration.

*Id.* at 238.

There is no suggestion in the Act or its related regulations that the Commission is entitled to set in motion after "term expiration" steps that could lead to revocation.

## V.

*The Commission did Not have the Authority to Withdraw, and Suspend Operation of, the Warrant once it had been Executed, and then to Hold it in Abeyance for Future Use*

 The authority upon which Cronn places principal reliance as to this issue is the decision of the Tenth Circuit in *Still v. United States Marshal*, 780 F.2d 848 (10th Cir. 1985). Up to a point, *Still* is indistinguishable in principle from the instant action.

The issue posed in *Still* was described by the Tenth Circuit as follows:

The issue presented by this appeal is whether the United States Parole Commission has the statutory authority to withdraw a parole violator warrant, once it has been executed, and hold it in abeyance pending the disposition of the state charges which form the basis of the warrant.

*Id.* at 849. After having been charged with state criminal offenses, federal parolee Still was taken into federal custody pursuant to execution of a parole violator's warrant; and, he went through a preliminary interview, at which he denied that he had committed the offenses with which he had been charged by the state authorities. *Id.* The probation officer who conducted the interview concluded that there was probable cause to believe that Still had violated conditions of his parole. *Id.* A revocation hearing was scheduled to be held, but was cancelled by the Commission. *Id.* at 850. Still then filed a petition for writ of *habeas corpus* and *mandamus*, seeking to compel the Commission to grant him a timely revocation hearing. *Id.* at 850. The Commission responded that the parole violator warrant had been withdrawn and was being held in abeyance pending the outcome of the state charges. *Id.* The district court denied Still's petition, concluding that the Commission had the authority under 18 U.S.C. § 4213(b) to postpone the hearing pending the outcome of the state charges. *Id.* at 850.

In its opinion reversing the district court, the Tenth Circuit reviewed the pertinent provisions of the Act, pointing out that:

The Act's procedural requirements are found in section 4214. Under this section, a parolee "retaken" pursuant to a warrant is entitled to a prompt hearing to determine whether there is probable cause to believe that he has committed a parole violation. 18 U.S.C. § 4214(a)(1)(A) (1976). Upon a finding of probable cause, the Act mandates a local revocation hearing within sixty days of the probable cause hearing. 18 U.S.C. § 4214(a)(1)(B) (1976).

*Id.* at 851. In response to the district court's conclusion concerning the effect of § 4213(b), the Tenth Court reasoned:

While this provision gives the Commission sufficient flexibility to defer a parole revocation hearing until the completion of the parolee's new sentence, it does not imply that, once the Commission has triggered the Act's procedural requirements by "retaking" the parolee pursuant to a warrant, *see Moody v. Daggett*, 429 U.S. 78, 89, 97 S.Ct. 274, 279, 50 L.Ed.2d 236 (1976), it can circumvent those requirements by simply withdrawing the warrant. First, we must presume that Congress understood the distinction between "issuance" and "execution," especially since it is only the latter which sets in motion the Act's procedural safeguards. Second, even if section 4213(b) expressly authorized the Commission to suspend *execution* of a warrant, it would not include the authority to *withdraw* a warrant once it has been executed. Because of the comprehensiveness of the Act's procedural requirements, we decline to read into it a procedure that Congress

could have easily provided for had it so intended.

*Id.*

Taking note of *Morrissey*, the Tenth Circuit pointed out that serious due process questions would be raised if the Act were given the meaning ascribed to it by the district court and the respondents, explaining:

[A] restrictive reading of the Act is mandated by the well-established principle of statutory construction that, in the absence of clearly expressed legislative intent, a statute should be construed to avoid difficult constitutional issues....

*Id.* But, the Tenth Circuit said that it did not need to reach that issue because of its conclusion that "the commission exceeded its statutory authority by withdrawing the parole violator's warrant and holding it in abeyance." *Id.* at 851–52.

As does respondent in the instant action, the respondents in *Still* urged as controlling the decisions in *Thigpen v. United States Parole Comm'n,* 707 F.2d 973 (7th Cir.1983), and *Franklin v. Fenton,* 642 F.2d 760 (3rd Cir.1980). The Tenth Circuit was not persuaded that *Thigpen* or *Franklin* should control, nor is this court.

After having been apprehended on a violator warrant issued in January 1977, the petitioner in *Franklin* was returned to federal parole supervision within two weeks. Upon release, a new warrant was issued in June 1977 but was not executed until after the petitioner had pleaded guilty to state criminal charges. The district court found the procedures followed by the Commission permissible. The Third Circuit affirmed. As a result of his first arrest based on the January 1977 warrant, the petitioner remained in custody for fourteen days. The Commission then ordered that the warrant be withdrawn, petitioner's parole not be revoked, and that he be released from custody immediately. The withdrawn warrant included a notation that the warrant had been reissued and was to be held in abeyance. On that same day, the Commissioner issued the new, June 1977, warrant, listing the identical parole violations as the first warrant. The new warrant was sent to the Marshal with instructions that it be held in abeyance and that, if petitioner

should plead guilty or be found guilty of pending charges, a detainer should be placed and custody should be assumed if and when released. After the second warrant was issued, it was supplemented by adding two additional violations. The petitioner pleaded guilty to the state charges against him and was sentenced to a state correctional institution. Pursuant to instructions to the United States Marshal, the warrant was lodged as a detainer against petitioner. The petitioner's original federal sentence expired October 12, 1977. In October 1978 the petitioner was granted a release on bond from a term of imprisonment he was then serving while his new conviction was on appeal. The detainer lodged against him would have prevented his release, but the prison officials were unable to locate the June 1977 warrant. To avoid release, the Commission, in October 1978, prepared a duplicate of the June 1977 warrant and directed that it be executed. It was executed, and petitioner was arrested and kept in confinement in a federal prison.

The district court in *Franklin* held (a) that the Commissioner had authority to revoke the January 1977 warrant and reissue another warrant, (b) that, since the June 1977 warrant had been issued and supplemented before the running of the term of petitioner's sentence, it remained valid thereafter, (c) that the October 25, 1978, document was a duplicate of the reissued warrant and, therefore, properly executed, (d) that because the detention in June 1977 had been only fourteen days, the Commission was not required to have a hearing because petitioner's release from confinement accomplished all that petitioner could have obtained in any event, and (e) that, even assuming that the petitioner had been improperly denied a hearing, he had not been prejudiced. In the course of affirming the district court, the Third Circuit placed reliance on § 2.44(b), 642 F.2d at 763, the pertinent part of which is set forth at page 15 of this memorandum opinion and order. *Franklin* gave the regulation a meaning that simply is not expressed or implied by its words. Moreover, *Franklin* is distinguishable from Cronn's case because in *Franklin* a new warrant was issued before

the term of imprisonment had run, but not so in Cronn's case.

Following the lead of *Franklin,* the Seventh Circuit in *Thigpen* concluded that "the Act permits the withdrawal of a previously executed warrant, its preservation in abeyance, and a deferral of a revocation hearing pending state judicial outcomes." 707 F.2d at 976. In addition to putting what this court has concluded was misplaced reliance on *Franklin,* the *Thigpen* court read too much into the Act. The Act does not hint that a revocation can be based on an *executed* warrant that was withdrawn, nor do the Commission's regulations.

Respondent also has argued that the Tenth Circuit's holding in *Turner v. United States Parole Commission,* 934 F.2d 254 (10th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 239, 116 L.Ed.2d 195 (1991), restricts its earlier holding in *Still* and causes *Still* not to be persuasive in the instant case. This court is not convinced that *Turner* dilutes the impact on this case of the conclusions that quite properly were reached by the Tenth Circuit in *Still.* In *Turner,* a parole violator warrant was executed on the petitioner in July 1987, and parole revocation proceedings followed. As a result of the revocation hearing, the hearing panel recommended that no decision be made as to the charge that the petitioner had violated state law by knowingly concealing stolen property. In October 1987 the Regional Commissioner issued a Notice of Action stating that there was no finding sufficient for revocation and ordering reinstatement of the petitioner to parole. The petitioner was released from custody. Thereafter, the petitioner was tried and convicted in a state court of the charge that he concealed stolen property, and was sentenced to state prison. When notified of the conviction, the Commission, in December 1987, issued a second parole violator warrant, this one based on the conviction. The United States Marshal was directed not to execute the warrant, but to place it as a detainer against the petitioner while he was serving his state court sentence. After a dispositional record review in February 1989, the Commission determined that the detainer should stand. Turner then filed the *habeas corpus* action

with which the Tenth Circuit was dealing on appeal. The trial court denied the requested writ, and the Tenth Circuit affirmed. In the course of distinguishing the issue before it in *Turner* from the issue with which it dealt in *Still,* the Tenth Circuit explained:

The Act is silent as to the question of whether a second warrant may be issued on the same underlying violation of law for which a previous warrant has been executed and a revocation hearing has been held. Turner seizes on this silence as dispositive, contending that our decision in *Still v. United States Marshal,* 780 F.2d 848 (10th Cir.1985), establishes that the Commission is empowered to do only those acts expressly authorized by 18 U.S.C. §§ 4213 and 4214. We disagree.

In *Still,* a parole violator warrant was issued and executed, and a preliminary interview held at which the Parole Commission found probable cause that Still had violated his parole. Thereafter, the Commission attempted to withdraw the parole violator warrant and to hold the warrant in abeyance pending the outcome of state charges upon which the parole violator warrant was based.

The issue in *Still* was "whether the Commission may defer a parole revocation hearing by withdrawing a previously executed parole violator warrant." *Id.* at 851. We held that "the Commission exceeded its statutory authority in withdrawing the parole violator warrant and therefore delaying petitioner's revocation hearing...." *Id.* at 853. That holding was based upon the majority's view that once a parolee is retaken by virtue of the execution of the parole violator warrant, the Act's procedural requirements are triggered and must be observed. *Id.* at 851. This view finds its basis in the due process safeguards announced in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), which were codified in the Act. In *Morrissey,* the Supreme Court held that a parolee may not be deprived of his conditional liberty through the execution of a parole violator warrant, without the basic due process safeguards of notice, prompt hearing, counsel, confrontation, and the opportunity to present evidence.

While *Still* stands for the proposition that once taken into custody a parolee is entitled to the hearing procedures provided under the Act, it does not address whether or not full scale proceedings in accordance with the Act may be instituted twice with respect to the same underlying state criminal charge.

*Id.* at 257. The ultimate holding in *Turner* was as follows:

We hold that the Parole Commission has not exceeded its statutory authority in issuing a second parole violator warrant on the same underlying parole violation when, at the first revocation hearing, it made no conclusive finding on the violation and conditionally reinstated the parolee to supervision and where the second warrant was based on the new evidence of a state court conviction....

*Id.* at 260.

The court does not view *Turner* as diluting *Still* in any respect that is pertinent to Cronn's case. *Turner* does not suggest that the first warrant could have been re-used. Instead, its holding is limited to the proposition that the Commission has the authority to issue a second warrant as to the same conduct referenced in the first warrant. While this court is not inclined to agree with the outcome in *Turner,* that is beside the point because *Turner's* outcome is based on a set of facts not present in the instant action.

Following *Still,* the court determines that, to whatever extent the Commission's conduct was intended to cause the withdrawn warrant to remain in effect after its execution and then withdrawal, the Commission exceeded its authority, and that, to whatever extent the Commission sought to deprive Cronn of the procedural rights of which he became possessed by virtue of having been retaken pursuant to the warrant, the Commission exceeded its authority. The Commission had the authority to issue the warrant, to use it as a detainer, and to hold its execution in

abeyance pending the outcome of state charges. But, it had no right to execute the warrant by arresting Cronn and putting him in confinement, then withdraw it and thereafter proceed as if the warrant was still valid and operative as a warrant issued before expiration of his term of confinement.[7]

## VI.

### *Cronn Certainly was Not Given A Timely Revocation Hearing After his First Retaking*

■ Whether the timeliness issue is evaluated from a constitutional standpoint or in the context of the controlling statute, the result is the same—there is no rational basis for saying that Cronn received a timely revocation hearing after the warrant was executed by his arrest and confinement on April 3, 1991. The first revocation hearing he had was over two years later, and was not held until after his second retaking. He never was given a revocation hearing in relation to his first retaking in April 1991.

*Morrissey* mandated that "[t]he revocation hearing must be tendered within a reasonable time after the parolee is taken into custody." 408 U.S. at 488, 92 S.Ct. at 2604. Obviously Cronn was denied his constitutional right in that regard as to his retaking in early 1991. Moreover, the Commission disregarded its statutory obligation to have a revocation hearing within sixty days of a probable cause determination. 18 U.S.C. § 4214(a)(1)(B). If the Commission chose not to pursue the matter further after a probable cause finding, the Commission had the statutory option to bring the matter to an end by, instead of having a revocation hearing, restoring the parolee to parole supervision, *see* 18 U.S.C. § 4214(a)(1)(A), as it did in Cronn's case by the action it took on May 3, 1991. If the Commission had intended to pursue the matter of revocation further pursuant to the warrant that was executed on April 3, 1991, it had the obligation under the

---

7. At a later point in this memorandum opinion and order there is a discussion of the possibility that Cronn's second retaking might be deemed to be pursuant to a new warrant, such as happened in *Turner.* As is noted in that discussion, respondent could not prevail if such an assumption

were to be made because the second warrant would be invalid by reason of having been issued after expiration of Cronn's term of confinement and after the Commission had lost supervisory authority over Cronn as a parolee.

statute to have a timely revocation hearing notwithstanding Cronn's discharge from custody. Section 4214(a)(1)(B) reads:

> (B) upon a finding of probable cause under subparagraph (1)(A), a revocation hearing at or reasonably near the place of the alleged parole violation or arrest within sixty days of such determination of probable cause except that a revocation hearing may be held at the same time and place set for the preliminary hearing.[8]

18 U.S.C. § 4214(a)(1)(B). No exception is made for a parolee who has been released from custody after having been retaken upon execution of a parole violator warrant. Thus, the statute simply does not support a contention respondent, through his counsel, asserted at the hearing held in this action August 19, 1993, that by releasing Cronn from custody on May 3, 1991, the Commission relieved itself of the procedural obligations imposed on it by § 4214 once the warrant was executed. Nor did the Commission relieve itself of its constitutional obligations by that means.

There is nothing in constitutional, statutory, regulatory, or case law that would support the proposition that the Commission can with impunity take a parolee away from his family, home, job, and community by a retaking pursuant to a parole violator warrant, hold him in custody for thirty days, and then relieve itself of the procedural obligations that were triggered by the retaking by the expediency of releasing the parolee from custody.

### VII.

*Revocation Could Not Legally be Based on the Things Done by the Commission After Cronn's Term of Confinement had Run*

■ Cronn was retaken by execution of the warrant on April 3, 1991. The warrant charged "Fraudulently Engaging in Sale and Offer for Sale of False Securities (5 Indictments)" (Charge # 1) and "Association with Person Having a Criminal Record" (Charge # 2). A preliminary interview was conducted, and the interviewing officer concluded that there was probable cause as to Charge # 1, but not as to Charge # 2. After those determinations were made, the Commission made the decision to reinstate Cronn to supervision, release him from custody forthwith, withdraw the warrant, and place the warrant in abeyance as to Charge # 1 pending disposition of the state charge.[9] Notwithstanding the notice of the Commission that the warrant was being placed "in abeyance pending disposition of the state charge", the only fair and reasonable interpretation of the events of early May 1991 is that the January 18, 1991, warrant pursuant to which Cronn was retaken had been spent—in effect, revoked. Those events might well have prevented the Commission from taking further action in reference to the charges made in the application for that warrant[10], but, be that as it may, the court has concluded that the Commission's conduct brought to an end in early May 1991 any life or vitality that was then left in the January 18, 1991, warrant. It became so lifeless that there was no legitimate means by which it could be resurrected, or that anyone's rights could be affected by future action taken pursuant to it.

This brings the court to the question of just what were the papers that were executed as a warrant in early February 1993 by the second retaking of Cronn. Apparently they included the same piece of paper that had been signed as a warrant by a Commissioner on January 18, 1991, and which had been spent by the Commission's conduct dur-

---

**8.** The court interprets the "preliminary interview" had in April 1991 to be the "preliminary hearing" contemplated by 18 U.S.C. § 4214.

**9.** There is nothing to indicate that the Commission intended in May 1991 to consider further the matter of Charge # 2.

**10.** Of course, as unfair as it may seem, *Turner* would support the proposition that the Commission could have issued a second parole violator warrant under the circumstances of this case,

which could have been put into effect by execution so long as its issuance occurred before Cronn's seven-year term had run. Perhaps justification for this seemingly inappropriate result can be found in the principle that seems to be well-established, at least in the Fifth Circuit, that the double jeopardy clause does not extend to parole proceedings. *See Cortinas v. United States Parole Comm'n,* 938 F.2d 43, 46 (5th Cir.1991); *United States v. Whitney,* 649 F.2d 296, 298 (5th Cir. Unit B June 1981).

ing and before early May 1991. It bore the signature of a Commissioner who had passed away prior to the apparent attempt to complete the resurrection of the paper in mid-January 1993 when it was put in the hands of a Marshal for execution. There were two supplementations to the application after the warrant was spent, one constituting a restatement of Charge #1 and the other adding an entirely new charge. The attempted resurrection and the supplementations all occurred after the running of Cronn's seven-year sentence of confinement—after the Commission no longer had the power of supervision over Cronn as a parolee.

The most that can be said for what the Commission did after Cronn's term of confinement had run is that the Commission took steps that arguably could constitute a *de facto* issuance of a second parole violator warrant.[11] If that is what the Commission is deemed to have done, the Commission did it too late because the "issuance" would have been after Cronn was free from parole supervision. No matter what view is taken of the things that occurred in reference to Cronn's parole status after he fully served his term of confinement, the only legitimate result would be the same. The steps the Commission took had no legal impact on Cronn, other than to cause him to be wrongfully confined from February 1, 1993, to the present and to require him to incur the expense he has incurred in the institution and pursuit of this action.

## VIII.

### Cronn's Writ Should be Granted

*Morrissey* noted that "[s]ociety has [an] interest in treating the parolee with basic fairness." 408 U.S. at 484, 92 S.Ct. at 2602. Under any sense of fairness, Cronn's retaking in February 1993 was unfair and highly

inappropriate. He was denied the opportunity following his first retaking to put the Commission to its burden to prove his violation of the state securities laws at a time when the government would not have benefited from the evidence that later was created by Cronn's Dallas County conviction.[12]

If the Commission were to prevail in this action, it would have made a mockery of the system. It deprived Cronn of his liberty in the spring of 1991, and then declined to follow through with the procedures that are mandated by Constitution, statute, and the Commission's own regulations. Instead, it released Cronn to resume his life, but then drew him back in, as if he were a yo-yo on a string, in February 1993, after his time for confinement had expired and he was well into service of his five-year term of probation. When it issued its order of revocation, it gave as one of its reasons for doing so a finding that Cronn had violated Charge #2, even though the interviewing officer at the preliminary interview held April 1991, had concluded that there was no probable cause as to that charge and even though there is not even a pretense that Charge #2 was suspended or carried forward.

The law, as well as basic fairness, dictates that Cronn be discharged from custody.

## IX.

### Order

The court, therefore, ORDERS that the petition for writ of *habeas corpus* of Cronn be, and is hereby, granted, that respondent immediately discharge Cronn from custody and that Cronn not be retaken into custody pursuant to any warrant related to his status as a parolee under the sentence he received by the November 9, 1982, judgment of the United States District Court for the North-

---

11. Counsel for respondent intimated at the hearing held August 19, 1993, that the Commission has responded to the *Still* decision by not withholding executed warrants and putting them in a state of suspension but by, instead, issuing a new warrant to replace the executed one and proceeding on the basis of the new warrant, as was done in *Turner*.

12. Respondent appreciates the value to the Commission of a delay until proof of the state court conviction could be had. *See* Supplemental Response to Petition for Writ of *Habeas Corpus* at 6. Respondent's argument suggests that Cronn would have suffered prejudice as a matter of law if he were to have been subjected to an untimely revocation hearing, held after the Commission could use his Dallas County conviction as proof that he violated his parole.

ern District of Texas, Dallas Division, pursuant to which he was ordered to serve a term of seven years of confinement.

## FINAL JUDGMENT

Consistent with the memorandum opinion and order signed by the court in the above-styled and numbered action on the date of the signing of this final judgment,

The court ORDERS, ADJUDGES and DECREES that the petition for writ of *habeas corpus* of Donald Lorrin Cronn, petitioner, be, and is hereby, granted, that respondent, Ron C. Burkhart, Warden, Federal Correctional Institution, Fort Worth, Texas, immediately discharge Donald Lorrin Cronn from custody and that Donald Lorrin Cronn not be retaken into custody pursuant to any warrant related to his status as a parolee under the sentence he received by the November 9, 1982, judgment of the United States District Court for the Northern District of Texas, Dallas Division, pursuant to which he was ordered to serve a term of seven years of confinement.