Revised August 27, 1998

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No.  96-40288

DONALD LORRIN CRONN,

Plaintiff-Appellant,

VERSUS

JOHN BUFFINGTON, U.S. Parole Commission; SUSAN HAAS, U.S. Probation Officer; WILLIAM FITZGERALD, U.S. Probation Officer; WADE E. FRENCH, Chief Probation Officer; GARY GREY, U.S. Parole Commission; RON BURKHART, Warden, FCI Fort Worth; KATHLEEN HAWK, Director, U.S. Department of Federal Bureau of Prisons; EDWARD F. REILLY, JR., U.S. Parole Commission; U.S. PAROLE COMMISSION; FEDERAL BUREAU OF PRISONS,

Defendants-Appellees.

Appeal from the United States District Court
For the Eastern District of Texas

August 26, 1998

Before WISDOM, KING and DAVIS, Circuit Judges.

DAVIS, Circuit Judge:

Plaintiff-Appellant Donald Lorrin Cronn appeals the district court's grant of summary judgment to Defendants in this civil rights action based on the court's conclusion that the Defendants were entitled to qualified immunity.  For the reasons that follow, we affirm.

Donald Lorrin Cronn ("Cronn") was sentenced in November of 1982 to seven years confinement and five years probation for conspiracy, wire fraud, and mail fraud, pursuant to 18 U.S.C. §§ 371, 1343 and 1341, respectively. He began his prison term in August of 1984, and was paroled in December of 1984, with a full-term release date in August of 1991.

After Cronn was arrested on a DWI charge in August of 1989, William S. Fitzgerald ("Fitzgerald"), a United States Probation Officer, notified John Buffington ("Buffington"), a Case Analyst for the United States Parole Commission ("the Commission"). In January of 1991, the Commission issued a parole-violator warrant ("warrant") as a detainer, based on Fitzgerald's report of Cronn's indictment on five separate violations of the Texas Securities Act. The Commission later supplemented the warrant with an additional violation based on another state charge.

The warrant was executed by placing Cronn into federal custody in April of 1991, upon his release by state authorities. At a preliminary interview with a Commission representative, Cronn denied the charged violations. After the representative found probable cause that Cronn had committed a parole violation, Cronn requested a revocation hearing, which was scheduled for June of 1991. In May of 1991, in response to a request from an Assistant United States Attorney that Cronn be allowed to act as a government informant in a telephone scam investigation, the Commission

released Cronn from custody. It held the original supplemented warrant in abeyance until resolution of the state charges. The requested parole revocation hearing was never conducted.

Cronn was convicted on the state securities charges in April of 1992, and he received a suspended sentence and probation. The conviction was reflected in a supplement to the warrant. Susan Haas ("Haas"), a probation officer, notified Buffington that Cronn had pled guilty to the earlier DWI charge and that he had been arrested on a new DWI charge in August of 1992. The earlier DWI offense was added to the warrant. After Haas and Fitzgerald requested that the warrant for Cronn's arrest be reinstated, Buffington reinstated the warrant in January of 1993. Following the second execution of the original warrant, Cronn received a revocation hearing. The parole panel recommended that Cronn's parole be revoked, and credited Cronn for the month he served in prison following the first execution of the warrant.

Cronn successfully filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Cronn v. Burkhart, 830 F. Supp. 946 (N.D. Tex. 1993). The district court held that the Commission lacked statutory authority to execute a parole-violator warrant, then withdraw the warrant and suspend its operation pending the outcome of the state charges. It also found that the Commission deprived Cronn of his right to the revocation hearing when he was retaken into custody. No appeal was taken from that order and it is now final.

3

In the instant suit, Cronn has alleged civil rights violations by individual federal Defendants and has sued the following officials of the United States Parole Commission and the Federal Bureau of Prisons in their individual and official capacities: John Buffington, case analyst for the Commission; Susan Haas, probation officer; William S. Fitzgerald, United States Probation Officer; Gary Gray, Administrator of the Parole Commission; Wade E. French, Chief Probation Officer for the Eastern District of Texas; Edward F. Reilly, Jr., Commissioner of the Parole Commission; Ron C. Burkhart, Warden at the FCI in Fort Worth; and Kathleen Hawk, Director of the Federal Bureau of Prisons. Also named as Defendants were the United States Parole Commission and the Federal Bureau of Prisons. We construe Cronn's action as one brought pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

Cronn alleged that failure to hold a parole revocation hearing was a denial of due process, that his second arrest for parole violation violated the Fourth and Fifth Amendments, and that his illegal incarceration was cruel and unusual punishment in violation of the Eighth Amendment. He claimed that Buffington, Haas, Fitzgerald, Gray, Burkhart, and Reilly personally deprived him of statutory and constitutional rights and that French and Haas also knew of and acquiesced in this deprivation. He sought both compensatory and punitive damages.

The Defendants moved for summary judgment, claiming they were

4

entitled to absolute and qualified immunity.  The trial court determined that Cronn had not been denied due process, rejecting the decision by the Northern District of Texas as being improperly decided and thus non-binding.  Because it found that the federal courts of appeal differed on whether a parole revocation hearing could be held in abeyance, the court determined that there was no clearly defined right to a revocation hearing under Cronn's circumstances.  It explained that the absence of a clearly defined right made it reasonable that the officials could believe that their conduct towards Cronn was lawful.  The district court granted qualified immunity to all Defendants.  Additionally it found that only Haas, Fitzgerald, and Buffington actually participated in revoking Cronn's parole and that the remaining Defendants could not be held liable for damages on a respondeat superior theory.  The district court dismissed the claims against those remaining Defendants on the additional ground of failure to state a claim upon which relief may be granted.[1]

## II.

We review a grant of summary judgment de novo.  Ganther v. Ingle, 75 F.3d 207, 209 (5th Cir. 1996).  Summary judgment is proper when no issue of material fact exists and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c). We view the facts and inferences in the light most favorable to the

---

[1]  FED. R. CIV. P. 12(b)(6).

5

non-movant.  <u>Faruki v. Parsons S.I.P., Inc.</u>, 123 F.3d 315, 318 (5th Cir. 1997).

III.

A.

To recover damages for an allegedly unconstitutional revocation of parole, a plaintiff must prove that his conviction or sentence has been reversed on direct appeal, expunged by executive order, or called into question by a federal court's issuance of a writ of habeas corpus.[2]  Unless the plaintiff can prove one of the three criteria, his claim is not cognizable and must be dismissed.[3]  Because the United States District Court for the Northern District of Texas granted Cronn's habeas petition, his <u>Bivens</u> claim for damages from alleged illegal incarceration is cognizable.

The Defendants claim qualified immunity, which shields a government official performing discretionary functions not only from liability but also from suit.[4]

The Supreme Court has clarified the proper analytical framework for addressing a claim of qualified immunity.[5]  Once a defendant pleads the defense of qualified immunity, the trial judge

---

[2]  <u>Heck v. Humphrey</u>, 512 U.S. 477, 486-87 (1994); <u>Littles v. Board of Pardons and Paroles Div.</u>, 68 F.3d 122, 123 (5th Cir. 1995).  <u>Heck</u> applies to <u>Bivens</u> actions.  <u>Stephenson v. Reno</u>, 28 F.3d 26, 27 (5th Cir. 1994).

[3]  <u>Heck</u>, 512 U.S. at 487.

[4]  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 807 (1982).

[5]  <u>Siegert v. Gilley</u>, 500 U.S. 226, 231 (1991).

must first determine "whether the plaintiff has alleged a constitutional violation at all" under current law.[6] If the plaintiff has done so, the judge then determines whether the defendant's actions were "objectively reasonable" with reference to "clearly established law" at the time of the conduct in question.[7] For a right to be "clearly established," its "contours ... must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."[8] This does not mean that prior cases must have held the particular conduct unlawful; "but it is to say that in the light of pre-existing law the unlawfulness must be apparent."[9] Having laid out the framework for determining if a plaintiff's allegations are sufficient to overcome a defendant's defense of qualified immunity asserted in a motion for summary judgment, we now turn to Cronn's claims.

B.

Cronn first alleges that the absence of a parole revocation hearing following the April, 1991 execution of the parole-violator's warrant unlawfully deprived him of his right to due process. In ruling on his habeas petition, the district court determined that Cronn's constitutional rights had been violated.

---

[6] Harlow, 457 U.S. at 818-819.

[7] Anderson v. Creighton, 483 U.S. 635, 641 (1987).

[8] Id. at 640.

[9] Id.

7

Cronn v. Burkhart, 830 F. Supp. 946, 957 (N.D. Tex. 1993). No appeal was taken from that judgment, and it is now final.[10] Id. at 957.

We therefore turn to the second prong of the Siegert analysis: whether the Appellees' conduct was objectively reasonable under clearly established law at the time of the conduct in question.

In 1972, the Supreme Court held that the execution of a parole-violator warrant triggered a parolee's due process rights to a revocation hearing.[11] Following that decision, Congress enacted the Parole Commission and Reorganization Act of 1976, 18 U.S.C. §§ 4201-4218 ("the Act").[12] It required a hearing within sixty days after a determination that there is probable cause to believe that a parolee has violated a condition of his parole.[13] Two days after Cronn was indicted and jailed for violations of the Texas Securities Act, the Commission issued a warrant as a detainer. When Cronn was released from state custody on April 3, 1991, the warrant was executed, and he was retaken into federal custody.

_____

[10] We do not necessarily agree with the district court's conclusion that Cronn's constitutional rights were violated, but we lack the power to review the validity of that decision because it stands as a final judgment.

[11] Morrissey v. Brewer, 408 U.S. 471, 485 (1972).

[12] Although these sections were repealed effective October 12, 1984, they remained applicable for ten years for individuals whose offenses were committed before November 1, 1987. Cronn's offenses fall within the applicable time period.

[13] 18 U.S.C. § 4214(a)(1)(B) (1985).

After a probable cause hearing, the revocation hearing was scheduled for June, 1991. That revocation hearing was never conducted because Cronn was released from custody on May 3, 1991, pending a resolution of the state charges, so that he could act as a government informant in a telephone scam investigation.

Although the statutory language appears clear, it in no way contemplates the situation which arises here. The statutory language directs that a revocation hearing be conducted within sixty days of the revocation of parole status because due process requires an opportunity for a hearing before the final decision on revocation is made by the parole authority. The purpose of this hearing is (1) to conduct a final evaluation of any contested facts; and (2) to consider whether the facts as determined call for the revocation of parole and completion of the full jail term.[14]

We recognize that Cronn did not receive the final hearing, scheduled for June, 1991, following the determination of probable cause. But the Defendants had good reason to believe that a hearing was no longer necessary after the parole violation warrant was withdrawn and held in abeyance, and Cronn was released on May 3, 1991. When Cronn was retaken into federal custody, he received a timely revocation hearing on April 6, 1993, and he was given credit for the month served in 1991. Based on these facts, and taking into consideration the purpose of a revocation hearing,

_____

[14] Morrissey, 408 U.S. at 488.

Cronn has failed to show that the Defendants violated clearly established law in failing to go forward with the parole revocation hearing once he was released and the warrant was withdrawn and held in abeyance. Because the statute does not specify the fate of the hearing once the parole revocation warrant is withdrawn, and the officials were not directed by clearly established case law regarding the proper course of action, we cannot conclude that the officials violated clearly established law by failing to proceed with a revocation hearing under the circumstances.

C.

Cronn next alleges that the re-execution of the warrant that was withdrawn and held in abeyance constituted a denial of his Fifth Amendment due process rights and a denial of his constitutional rights under the Fourth and Eighth Amendments. The district court held that Cronn's constitutional rights were violated as a result of the reissuance of the warrant, and that decision stands as a final judgment.[15]

We therefore turn to the second prong of Siegert, which is whether Cronn's right to be free from the second execution of a warrant that had been withdrawn and held in abeyance was clearly established at the time the warrant was re-executed.[16]

---

[15] See supra note 10.

[16] Cronn's parole violation warrant was withdrawn May 3, 1991, and held in abeyance pending the completion of his role as a confidential informant and the resolution of the state securities fraud charges against him. Ultimately, the warrant was

10

At the outset, we note that a parole violation warrant may be validly executed after the expiration of the violator's original jail term as long as it has been issued within that term.[17]

We now examine the law as it then existed to assess what, if any, "clearly established" legal standard governed the authority of the Commission to withdraw an executed warrant, hold it in abeyance pending disposition of other criminal charges, and re-execute that warrant. We find that five Circuits had addressed this or a similar issue and had arrived at differing conclusions.

The Tenth Circuit determined that the Commission lacked the statutory authority to withdraw a warrant once it has been executed and to hold it in abeyance pending the disposition of the state charges which form its basis.[18] A later Tenth Circuit case held, however, that the Commission did have the authority to withdraw an improperly executed warrant and issue a second one.[19]

---

supplemented with additional convictions of DWI and securities violations, and was re-executed January 14, 1993.

[17] Franklin v. Fenton, 642 F.2d 760, 764 (3d Cir. 1980) (holding that the date of issuance, not of execution, is critical); United States v. Chancey, 695 F.2d 1275, 1277 (11th Cir. 1982) (holding that issuance of a warrant prevents the sentence from expiring, and allows the Parole Commission to retain jurisdiction to revoke parole); 28 C.F.R. § 2.44(d)(1977)(stating that issuance of a parole violator's warrant bars the expiration of a parolee's sentence and maintains the Commission's jurisdiction to retake the parolee before or after the normal expiration date of the sentence.).

[18] Still v. United States Marshal, 780 F.2d 848, 851-53 (10th Cir. 1985).

[19] McConnell v. Martin, 896 F.2d 441, 446 (10th Cir. 1990).

11

Both the Seventh and Third Circuits held that the Commission may withdraw a previously executed warrant and hold it in abeyance pending a final disposition of state criminal charges.[20] The Seventh Circuit in Thigpen determined that there was no need to issue a new warrant and that re-execution of the original warrant was proper.[21] It reasoned that because the Commission may defer the revocation hearing until the resolution of state charges and may restore a parolee to supervision even if probable cause for a violation is found without a revocation hearing, the Commission must be able to withdraw a warrant, hold it in abeyance, and then re-execute it.[22] The Seventh Circuit recognized the "salutary policy of allowing a suspected parole violator to clear himself of state charges prior to his revocation hearing, thus avoiding the necessity of his choosing between pleading his right against self-incrimination, making admissions against his interest, or testifying falsely to exculpate himself."[23]

With this philosophy in mind, the Thigpen court thus called for a commonsensical and policy-sensitive reading of the Act that would yield the conclusion that the Commission may withdraw and re-

---

[20] Thigpen v. United States Parole Comm'n, 707 F.2d 973, 978 (7th Cir. 1983); Franklin, 642 F.2d at 763.

[21] Thigpen, 707 F.2d at 977-78.

[22] Id. at 976-77; 18 U.S.C. §§ 4213(b) & 4214(a)(1)(A)(i) (1985) (both in effect during the period in question).

[23] Thigpen, 707 F.2d at 976.

12

execute a warrant, and then conduct a revocation hearing.

The Third Circuit in <u>Franklin</u> came to a similar conclusion. It recognized the Commission's authority to withdraw a warrant, issue a new warrant listing the same violations as the first, and then hold that warrant in abeyance until the resolution of the state charges.[24]   The Seventh Circuit, in discussing <u>Franklin</u>, characterized the difference between the withdrawal and reissuance of an old warrant and the issuance of a new warrant as inconsequential.[25]

The Eighth Circuit, in somewhat dissimilar circumstances, held that the Commission does not possess implicit authority to withdraw an executed warrant.[26]   Sensitive to the policy concerns behind holding a warrant in abeyance, the court found that when a warrant was executed after the disposition of state charges, and then withdrawn and held in abeyance to be re-executed later, the concerns expressed by the <u>Thigpen</u> and <u>Franklin</u> courts were not implicated.  It did not, however, hold that the Commission had no power to re-execute a warrant in other circumstances.

Finally, this Circuit's only ruling regarding the Commission's authority to withdraw a warrant involved one executed contrary to

---

[24] <u>Franklin</u>, 642 F.2d at 763.

[25] <u>Thigpen</u>, 707 F.2d at 977.

[26] <u>Donn v. Baer</u>, 828 F.2d 487, 490 (8th Cir. 1987).

13

its terms.[27]  The Commission issued a warrant to the United States Marshal, with instructions to use the warrant as a detainer if the parolee was already in state custody.  Although the parolee was in a state facility, the Marshal executed the warrant and placed the parolee in federal custody.  Almost a month later the Commission realized the error, withdrew the warrant and replaced it as a detainer.  The Court held that the Commission has the authority to have such an invalid warrant replaced as a detainer.

The conflicting Circuit decisions in effect at the time of Cronn's complaint indicate that no "clearly established" legal standard existed, such that officials could determine that their conduct - the withdrawal, holding in abeyance, and re-execution of a parole violation warrant - violated Cronn's rights.  Because there was no "clearly established" right to be free from seizure under such a warrant, we affirm the district court's judgment granting summary judgment to the defendants based on the defense of qualified immunity.

D.

We affirm, in addition, the district court's dismissal of claims against all Defendants other than Haas, Fitzgerald, and Buffington, due to Cronn's failure to state a claim against them upon which relief may be granted.

Because there is no doctrine of respondeat superior in Bivens

---

[27] Chandler v. Barncastle, 919 F.2d 23, 26 (5th Cir. 1990).

14

actions,[28] the supervisory federal officials named in the suit may be held liable only upon two bases. First, personal involvement in the acts causing the deprivation of a person's constitutional rights creates personal liability.[29] Cronn has failed to state facts that indicate this degree of involvement. Second, a supervisory official may be held liable if he implements a policy so deficient that the policy itself acts as a deprivation of constitutional rights.[30] The record fails to reveal the existence of such a policy. Because neither predicate for liability is satisfied, we agree that Cronn has failed to state a claim against the non-participating officials and that they were properly dismissed pursuant to FED. R. CIV. P. 12(b)(6).

For the foregoing reasons we affirm the judgment of the district court in all respects.

AFFIRMED.

---

[28] See Abate v. Southern Pac. Transp. Co., 993 F.2d 107, 110 (5th Cir. 1993) (and cases cited therein).

[29] Thompkins v. Belt, 828 F.2d 298, 304 (5th Cir. 1987).

[30] Id.

15