George THOMPKINS,
Plaintiff-Appellant,
Cross-Appellee,

v.

Bill BELT, Sheriff, Avoyelles Parish, et al., Defendants-Appellees,
Cross-Appellant.

No. 86–4187.

United States Court of Appeals,
Fifth Circuit.

Sept. 29, 1987.

Louis Berry, D. Wayne White, Alexandria, La., for plaintiff-appellant, cross-appellee.

Norris Greenhouse, John T. Bennett, Marksville, La., for defendants-appellees, cross-appellant.

Before GARWOOD, JOLLY, and HILL, Circuit Judges.

GARWOOD, Circuit Judge:

George Thompkins brought this suit under 42 U.S.C. § 1983 claiming that his Eighth Amendment rights were violated because he was denied access to medical treatment for a back injury he suffered while he was incarcerated in a Louisiana parish jail. Thompkins named as defendants the parish sheriff, Bill Belt, and Belt's liability insurer, American Druggist Insurance Company. Thompkins was awarded $4,500 as compensatory damages in a

bench trial. He appeals, claiming that this award is inadequate respecting his compensatory damages, and that the district court erred by failing to award punitive damages and by denying his motion for new trial. On cross-appeal, defendants raise in substance three issues, claiming (1) that the district court's finding that Thompkins was injured while an inmate of the parish jail is clearly erroneous, (2) that there is no legal basis for finding Sheriff Belt liable, and (3) that the district court erred in refusing to amend the judgment to delete American Druggist Insurance Company as a defendant.

We determine that Thompkins' contentions lack merit and that the district court was not clearly erroneous in finding Thompkins was injured while he was incarcerated in the Avoyelles Parish jail. We conclude, however, that the findings of the district court do not adequately state any proper basis for holding the sheriff liable under section 1983, and we therefore vacate the award of damages and remand the case for further findings of fact respecting liability and for the entry of judgment accordingly. Because we do not decide the issue of liability, we do not reach the issue respecting the status of American Druggist Insurance Company.

### I.

The essential facts of this case, as stated in the district court's findings of fact and conclusions of law, are adequately supported by the record. Thompkins was incarcerated in the Avoyelles Parish Jail ("the jail") in Marksville, Louisiana from April to December 13, 1983, when he was transferred to the Hunt Correctional Institute ("the prison"). He was a trustee-janitor in the jail, and the district court found "it is more probable than not that he injured his back in late June of 1983" while mopping a floor in the jail. Thompkins testified that he asked to see a physician or to be taken to a hospital[1] but that he was

denied treatment despite his repeated requests.

Thompkins testified that he and his wife made his ailment and need to see a physician known to other inmates, numerous members of the jail staff, and the volunteer nurse who visited the jail and was available for inmate care twice a week. Jail staff personnel claimed that Thompkins received nonprescription drugs, continued to work, and did not ask for additional treatment. Describing this as "a classic case of conflicting testimony" respecting Thompkins' assertion of requests for medical treatment, the district court credited at least some of Thompkins' claims that he asked to see a doctor, finding:

> "No later than 1 August 1983 plaintiff should have been afforded the opportunity to be examined by a physician.
>
> " . . . .
>
> " . . . [T]his Court concludes that a preponderance of the evidence supports the proposition that plaintiff was uncomfortable, in pain and frustrated from his denial of medical personnel capable of evaluating and treating his back condition from 1 July to 12 December 1983. The sheriff's department knew plaintiff had had prior back problems. An avenue to relief should have been opened to plaintiff by exposure to professional treatment no later than eight weeks after the injury or approximately 1 September 1983. Accordingly, it is from that date to 13 December 1983 that the plaintiff is entitled to damages."

After Thompkins was transferred to the prison, x-rays were made of his back, but his ailment was not immediately diagnosed. He was placed on light duty status, but was required to perform heavier manual labor than he had in the jail. He either further injured his back or aggravated his existing back injury, and eventually required back surgery in the spring of 1984. The district court specifically declined to find any causal link between the injury in

---

1. At the times in issue, physicians did not make calls into the jail; instead, inmates who needed care beyond what the jail's visiting nurse could provide were taken to area doctors or hospitals. The jail now has visiting physicians.

the jail and this later surgery[2]; and no damages were awarded for events after Thompkins' transfer.

The district court found "deliberate indifference to serious medical needs" and concluded that the sheriff's employees, staff, or department knew of Thompkins' needs and nevertheless failed to have him seen by a physician; however, the district court's findings do not clearly state that Sheriff Belt personally was ever aware of Thompkins' condition or requests.[3] The record discloses that Sheriff Belt was directly contacted about Thompkins' back problems and need to see a doctor only on December 12, 1983, the day before Thompkins was transferred to the prison, when Thompkins' wife called upon the sheriff in his office.

## II.

Thompkins brings three complaints on appeal, two relating to the amount of damages awarded, and the third to the district court's denial of his motion for a new trial.[4]

### A. Damages

Thompkins sought $5 million in compensatory damages and $1.5 million as punitive damages, but was awarded no punitive damages and $4,500 as compensatory damages. He claims that the compensatory damage award is inadequate, and that the district court also erred by failing to award him punitive damages.

Compensatory damages for section 1983 purposes are governed by common-law tort principles. *Keyes v. Lauga*, 635 F.2d 330, 336 (5th Cir.1981). The amount of damages awarded by the fact finder must be sustained, absent an error of law, unless the reviewing court finds the amount is clearly erroneous, *Winbourne v. Eastern Airlines, Inc.*, 758 F.2d 1016, 1018 (5th Cir.1984), or so gross or inadequate as to be contrary to right reason, *Young v. City of New Orleans*, 751 F.2d 794, 798 (5th Cir.1985). Because Thompkins was a prisoner during the period at issue, his compensable damages involve only pain and suffering, and not medical costs[5] or lost earnings. In addition, the district court's finding, which we determine is not clearly erroneous, that the delay in providing proper medical treatment did not in itself cause Thompkins' surgery or his later ailments precludes any award of damages for subsequent suffering or future economic losses occurring after December 13, 1983. The district court's decision to award no more than $4,500 for the three and a half months during which Thompkins was found to have suffered pain and discomfort caused by the lack of proper treatment therefore does not appear to be inadequate in the sense of being clearly erroneous or contrary to right reason.

Punitive damages can be awarded under section 1983 only if official conduct is "motivated by evil intent" or demonstrates "reckless or callous indifference" to

2. Thompkins had been treated for a back injury in 1977, and physician witnesses suggested that events in the jail and prison may only have aggravated a preexisting condition.

3. The district court's findings do not indicate that Sheriff Belt had personal knowledge of Thompkins' back problem or his desire to be seen by a physician. Instead, the findings mention only communications by Thompkins and his wife *to the jail staff* and awareness of Thompkins' problems *only among the staff:* "Plaintiff also states that from the date of the accident to 12 December 1983 he constantly complained *to sheriff employees* asking for medical assistance." "*The sheriff's department knew....*" "*The Avoyelles Parish sheriff staff* probably felt plaintiff's complaints were without foundation...." (Emphasis added.)

4. In discussing these issues, we assume *arguendo* that liability on the part of the sheriff exists, although, as we discuss below, it is not clear that Sheriff Belt can be held liable.

5. Some evidence at trial indicated that prisoner medical costs are paid by the governmental entity with custody of the prisoner. However, Mrs. Thompkins testified that her employment-related medical insurance covered the costs of her husband's treatment, although it is not clear whether she meant her husband's 1977 hospitalization or his 1984 surgery. In any event, Thompkins neither asked to recover medical costs nor proved any specific amount thereof. Moreover, the district court found, on adequate evidence, that Thompkins' surgery was not "necessitated by the failure to obtain a medical examination while [he was] in Avoyelles Parish Jail."

constitutional rights. *Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983). The purpose of granting punitive damages under section 1983 is to deter future egregious conduct that violates constitutional rights. *Creamer v. Porter,* 754 F.2d 1311, 1319 (5th Cir.1985). Although the district court found "deliberate indifference to serious medical needs," it denied punitive damages because it found that the remedial measures required were in effect by the time of trial through changed inmate medical care policies.[6] Even if a party has made a showing justifying an award of punitive damages, the decision whether to award such damages is within the discretion of the trier of fact, *Creamer,* 754 F.2d at 1320, and no abuse of discretion is established here.

### B. Denial of Thompkins' motion for new trial

■ Thompkins moved for a new trial, asserting the inadequacy of damages awarded as discussed above, and protests the district court's denial thereof. "The decision to grant or deny a motion for new trial generally is within the sound discretion of the trial court and will not be disturbed unless there is an abuse of that discretion or misapprehension of the law"; review of the denial of a motion for new trial is especially deferential. *Dixon v. International Harvester Co.,* 754 F.2d 573, 586 (5th Cir.1985). Thompkins' motion merely restated the facts of the case and advanced no specific theory or facts to support his claim that a new trial was appropriate. On appeal, Thompkins merely lists the denial of his motion as an issue, and then restates it in one sentence on the brief's final page. If Thompkins has any basis (other than the arguments advanced in his other claims of error respecting the damages, which we have already rejected) for claiming that the district court abused its discretion, his contention is not adequately presented or briefed and accordingly will not be considered on appeal. *See*

*Morrison v. City of Baton Rouge,* 761 F.2d 242, 244 (5th Cir.1985).

Accordingly, we determine that Thompkins' issues on appeal are without merit.

### III.

Defendants by cross-appeal complain that the district court was clearly erroneous in its fact-finding, that there is no legal basis for finding Sheriff Belt liable, and that the district court erred in refusing to amend the judgment in respect to American Druggist Insurance Company. We address each contention in turn.

### A. The date, place, and degree of Thompkins' injury

■ Defendants ask that we review the evidence—*e.g.,* evidence that Thompkins continued to work as a janitor, did not remain in bed, and was reinjured after his transfer to the prison—and conclude that the district court was clearly erroneous in finding that Thompkins was injured in the jail and in finding that his injury amounted to a "serious medical condition."

As we have noted above, the district court heard conflicting testimony and believed Thompkins' testimony that he was injured in the jail, and, more generally, his version of events, at least in part: "I find that plaintiff complained about his condition, [that] his degenerative back condition was serious, and that he ... did not receive satisfactory relief from the conservative treatment" in the jail. The district court also stated, "[T]he Court made its credibility and factual findings in favor of plaintiff." Decisions on witness credibility are unquestionably within the province of the finder of fact. Furthermore, there was testimony to support each finding, and we do not view the challenged findings as clearly erroneous. We reject this claim of error.

---

**6.** The district court's findings state: "[T]he defendant should have provided regular, on-the-premises medical examination and evaluation procedures or speedy access thereto. The sheriff's office does now provide that professionalism.... In other words, the ill has been cured. Punitive damages are not necessary."

## B. The legal basis of Sheriff Belt's liability

Defendants also argue that Sheriff Belt cannot be held liable under section 1983 for any injury suffered by Thompkins because the record does not support a determination that, during the period for which liability was imposed (September 1 to December 13, 1983), Sheriff Belt either (1) knew about Thompkins' condition and was deliberately indifferent in providing care, and/or (2) knew of or took part in implementing any policy that was deliberately indifferent to inmates' needs for adequate medical care.

Under the Eighth Amendment, a lack of proper inmate medical care can be "cruel and unusual punishment" only if "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). Because "an inadvertent failure to provide adequate medical care" does not violate the Eighth Amendment, deliberate indifference does not include "a complaint that a physician has been negligent in diagnosing or treating a medical condition." *Id.* It is only deliberate indifference—" 'an unnecessary and wanton infliction of pain' ... [or acts] 'repugnant to the conscience of mankind,' " *id.*—that constitutes conduct proscribed by the Eighth Amendment, *d.* 97 S.Ct. at 291 (quoting *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976) (Stewart, Powell, Stevens, JJ.)). Such deliberate indifference is impermissible whether it "is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care...." *Gamble,* 97 S.Ct. at 291 (footnotes omitted).

■ Because section 1983 claims asserting violations of constitutional rights flow through the Fourteenth Amendment, an action brought by a state inmate against a state actor is limited by the reach of that amendment. Construing the protections of the Fourteenth Amendment in such cases, we have written that

"an individual instance of negligence on the part of a jailor does not violate the due process clause of the Fourteenth Amendment, for that clause was intended to secure the individual from the arbitrary exercise of the power of government. But the clause does protect against arbitrariness and abuse of power, as distinguished from negligence or lack of due care." *Partridge v. Two Unknown Police Officers of Houston,* 791 F.2d 1182, 1187 (5th Cir.1986) (discussing *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)). *See also Daniels,* 106 S.Ct. at 664 (indicating this standard applies to prisoners' claims that denial of medical treatment constitutes cruel and unusual punishment); *Partridge,* 791 F.2d at 1187 (stating that a facility's "deliberate and systematic lack of adequate care for detainees" is the "kind of arbitrariness and abuse of power that is preserved as a component of the due process clause in *Daniels* ").

The district court found that Thompkins' condition involved serious medical needs, and that he asked for but was denied access to proper care. *See Johnson v. Treen,* 759 F.2d 1236, 1237 (5th Cir.1985) ("[A] prisoner must prove that care was denied and that this denial constituted 'deliberate indifference to serious medical needs.' ") (citations omitted). The district court's express findings establish a claim on Thompkins' part only against those particular individuals who were deliberately indifferent to his medical needs.

The district court did not specifically find that Sheriff Belt knew of Thompkins' condition, was personally indifferent in providing care, or had personally implemented a system which exhibited conscious indifference on his part to the medical needs of inmates. Instead, as noted above, the district court attributed the denial of care to the jail staff at large.

■ The district court's findings and conclusions do not make clear on what basis it held the sheriff individually liable. Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability. *E.g., Thibodeaux v. Arceneaux,* 768 F.2d 737, 739 (5th Cir.1985) (per curiam); *see*

also *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 1297–98, 1298 n. 7, 89 L.Ed.2d 452 (1986) (discussing rule that vicarious liability does not apply in claim brought under section 1983). However, a supervisor may be held liable if there exists either (1) his personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *See Harvey v. Andrist,* 754 F.2d 569, 572 (5th Cir.), *cert. denied,* 471 U.S. 1126, 105 S.Ct. 2659, 86 L.Ed.2d 276 (1985).

Noting the absence of any such express finding and the dearth of evidence in the record clearly indicating personal knowledge on the part of the sheriff, we decline to affirm liability on that basis.[7]

■■■ Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy "itself is a repudiation of constitutional rights" and is " 'the moving force of the constitutional violation,' " *Grandstaff v. City of Borger,* 767 F.2d 161, 169, 170 (5th Cir.1985), *cert. denied,* — U.S. —, 107 S.Ct. 1369, 94 L.Ed.2d 686 (1987) (quoting

*Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978)); *see also O'Quinn v. Manuel,* 773 F.2d 605, 609 (5th Cir.1985) (police supervisory body cannot be held liable for conduct of police without knowledge about that conduct); *Barksdale v. King,* 699 F.2d 744, 746 (5th Cir.1983) (per curiam) (requiring as a precondition of supervisory liability that the official's acts caused the constitutional violation).[8]

If Sheriff Belt did not knowingly disregard Thompkins' pleas to see a doctor, he cannot be held liable unless he knew the jail's system was so deficient as to expose prisoners to substantial risk of significantly unmet serious medical needs—*i.e.,* was unconstitutional—and failed to properly attempt to correct it, *and* unless his action or inaction in this respect caused Thompkins' injuries. We have held, in a claim against a Louisiana Police Jury, that the existence of a constitutionally deficient policy cannot be inferred from a single wrongful act. *O'Quinn,* 773 F.2d at 610 (citing *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)); *see also, Tuttle,* 105 S.Ct. at 2436 (plurality opinion) ("[W]here the policy relied upon is not itself unconstitutional, considerably more

---

**7.** Our review of the record does not disclose evidence plainly reflecting Sheriff Belt's knowledge. There was evidence that Mrs. Thompkins *attempted* to see the sheriff and that she left messages for him in an effort to inform him of her husband's problems; her testimony did not, however, indicate that the messages she left included any information about the reason she wanted to speak with the sheriff. Mrs. Thompkins' testimony indicated that she told the sheriff about her husband's back problem for the first time on December 12, 1983. If this were the sheriff's first personal knowledge, it would obviously be too late to sustain liability. However, because the record is replete with testimony suggesting that Mr. and Mrs. Thompkins had previously communicated directly with virtually everyone at the jail except the sheriff, we do not decide that there was no evidence from which the district court could have found that Sheriff Belt knew of Thompkins' condition and requests for medical aid during the period in question.

**8.** We note that supervisory liability under section 1983 has been imposed if officials permit " 'systematic maladministration' of the laws" in a discriminatory manner, *Bennett v. City of Slidell,* 728 F.2d 762, 768 (5th Cir.1984) (en banc)

(quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 1613 & n. 39, 26 L.Ed.2d 142 (1970)), *cert. denied,* 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985), or when "supervisors ... breach duties imposed by local laws," *O'Quinn,* 773 F.2d at 608 (citing cases).

Under Louisiana law, "[t]he administration of the [parish] jails is the province of the sheriff" who " 'has the duty of operating the jail and seeing to it that the prisoners are properly cared for....' " *O'Quinn,* 773 F.2d at 609 (citing La. Rev.Stat.Ann. § 15:704 (West 1981) and quoting *Amiss v. Dumas,* 411 So.2d 1137, 1141 (La.App. 1st Cir.), *writ denied,* 415 So.2d 940 (La.1982)). We observe, however, that Thompkins did not argue at trial or on appeal that Sheriff Belt breached or maladministered local law, and that recent Supreme Court decisions call into question the proposition that a breach of duties imposed by state law can form the basis of an action under section 1983, *see Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 667, 88 L.Ed.2d 662 (1986) ("Jailors may owe a special duty of care to those in their custody under state tort law, ... but ... we reject the contention that the Due Process Clause of the Fourteenth Amendment embraces such a tort law concept.").

proof than the single incident [of unconstitutional conduct forming the basis of the section 1983 action] will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation.") (footnotes omitted).

■ The sole possible basis for supervisory liability identified by the district court was that "[t]here either should have been professional medical attention available on the premises on a regular basis, or speedy access to the same." However, Thompkins adduced no evidence whatever that the jail's treatment system had ever actually failed to deliver necessary and appropriate medical care to any other inmate, or that the sheriff was otherwise actually informed or consciously believed that the policy would expose prisoners to substantial risk of significantly unmet serious medical needs, and we find in the record no substantial evidence that the jail's policy for inmate medical treatment was constitutionally defective during the time Thompkins was incarcerated there.[9] Accordingly, we conclude that Sheriff Belt cannot be held liable on the theory that he implemented an unconstitutional policy when the record below indicates no more than that the system may have failed in the one particular instance of Thompkins' back injury.[10]

■ We observe that Thompkins elected to bring suit only against Sheriff Belt personally and did not name as defendants other members of the sheriff's staff. Because misconduct of Sheriff Belt's employees cannot be imputed to the sheriff individually, and because the findings and conclusions of the district court do not disclose what Sheriff Belt personally did wrong, if anything, we cannot affirm the judgment against him and so vacate the judgment and remand for further findings of fact. We further direct that judgment for defendants be entered if the district court determines that Sheriff Belt was not aware of Thompkins' back condition and his requests for medical treatment during the period in question.[11]

## C. American Druggist Insurance Company

American Druggist Insurance Company complains that the district court erred in

---

9. *Compare Ruiz v. Estelle,* 679 F.2d 1115, 1149–50 (5th Cir.) (describing constitutionally defective system for medical care of inmates), *amended and vacated in part,* 688 F.2d 266 (5th Cir.1982) (vacating portions of order regarding prison hospital because of party settlement), *cert. denied,* 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983).

10. Evidence at trial reflected that, while Thompkins was in the jail, inmates with nonemergency problems were seen at sick call by a volunteer nurse who visited twice weekly and that inmates were routinely taken out of the jail for necessary medical treatment. We note that physicians did not visit the jail during Thompkins' stay and that nonmedical sheriff's staff personnel may have been entrusted with the ultimate decision about whether an inmate would be able to see a physician. Although the absence of professional medical help on the premises has been found to violate constitutional standards in suits seeking injunctive relief, such cases have involved proven histories of multiple constitutional violations rather than a single breakdown of the treatment system. *Cf. Gates v. Collier,* 349 F.Supp. 881, 888, 901 (N.D.Miss. 1972) (finding professional care was unavailable), *aff'd,* 501 F.2d 1291, 1300–01 (5th Cir. 1974) ("The prohibition against cruel and unusual punishment ... is not limited to specific acts directed at specific individuals, but is equally pertinent to general conditions of confinement that may prevail at a prison."), *amended by* 390 F.Supp. 482 (N.D.Miss.1975), *aff'd,* 525 F.2d 965 (5th Cir.), *supplemented by* 423 F.Supp. 732 (N.D.Miss.1976), *aff'd and remanded,* 548 F.2d 1241 (5th Cir.1977) (per curiam); *see also Newman v. State of Alabama,* 349 F.Supp. 278 (M.D.Ala.1972) (requiring extensive remedial measures in prison medical care), *aff'd,* 503 F.2d 1320 (5th Cir.1974), *cert. denied,* 421 U.S. 948, 95 S.Ct. 1680, 44 L.Ed.2d 102 (1975), *award of attorneys' fees vacated,* 522 F.2d 71 (5th Cir. 1975) (en banc) (per curiam). Allowing other inmates to perform ancillary health care roles, as was permitted to a very limited extent in the jail, has been barred by this Court when significant health care roles in a facility were performed primarily by inmates and when that policy resulted in a significant history of constitutionally impermissible care. *E.g., Ruiz v. Estelle,* 679 F.2d at 1149–50 (describing care administered by inmates).

11. This is, of course, an issue on which Thompkins has the burden of proof.

We also note that, if judgment for defendants is entered after remand, the district court's award of attorneys' fees to Thompkins under section 1988 would no longer be appropriate.

refusing to amend the judgment to delete it as a liable defendant after it so moved under Rule 59, Fed.R.Civ.P. Because our remand of this case may result in a finding that no liability exists on the part of the sheriff, we need not address the merits of this issue. We observe, however, that one attorney purports to represent Sheriff Belt as well as American Druggist (which claims its liability coverage of the sheriff ended in August 1983) and yet another insurer (which this attorney claims provided liability coverage for the sheriff after August 1983).

Because Thompkins' denial of treatment occurred during September through December 1983, this attorney argues, the district court erred in refusing to amend its judgment to delete American Druggist. Furthermore, at oral argument this attorney volunteered the second insurance company he represents to stand in the shoes of American Druggist and assured the Court that Sheriff Belt, his third client, would not be left standing alone to face a judgment uninsured because of these maneuverings. If a judgment for Thompkins is entered after remand, we leave it to the district court to consider the applicability of Rules 59 and 60(b), Fed.R.Civ.P., and, as may be necessary, to resolve the apparent conflict of interests these facts suggest and determine any related questions of who represents whom.

### Conclusion

Accordingly, we vacate the judgment below and remand for proceedings consistent with this opinion.

VACATED and REMANDED.