Wendell NOWELL

v.

ACADIAN AMBULANCE
SERVICE, et al.

No. Civ.A. 00–0696.

United States District Court,
W.D. Louisiana,
LaFayette-Opelousas Division.

April 13, 2001.

Leonard Radlauer, New Orleans, LA, for plaintiff.

Mark E. Stipe, Perret, Doise, et al, Lafayette, LA, for Acadian Ambulance Service.

James L. Pate, Laborde & Neuner, Lafayette, LA, for Sheriff Charles Fuselier, Sergeant Gerald Savoy, Corporal Charles Scott and Deputy Patrick Clay.

### REASONS FOR JUDGMENT

TYNES, United States Magistrate Judge.

Pending before the court is the Motion for Summary Judgment filed by Sheriff Charles Fuselier ("Fuselier"), Sergeant Gerald W. Savoy ("Savoy"), Corporal Charles Scott ("Scott") and Deputy Patrick Clay ("Clay") on February 26, 2001 and the Motion for Summary Judgment or Alternatively Motion to Dismiss Pursuant to Rule 12 (b) filed by Acadian Ambulance Service, Inc. ("Acadian") on February 26, 2001. (Document Nos. 72 and 75). No opposition has been filed with respect to either motion, and the deadline for filing opposition has expired.[1]

Nowell filed this civil rights action on April 7, 2000. In his Complaint and Amended Complaints, Nowell names the following defendants: Acadian Ambulance Service, Inc., Sheriff Charles Fuselier, Sergeant Gerald W. Savoy, Corporal Charles Scott and Deputy Patrick Clay. (Document Nos. 1, 25, 56). He asserts that his civil rights were violated when he was unlawfully detained and assaulted and battered on April 30, 1999. Plaintiff's claims are asserted under 42 U.S.C. §§ 1983 and 1988; the Fourth and Fourteenth Amendments to the United States Constitution; Louisiana Civil Code Article 2315 and Louisiana Constitution Article 1, Sections 2 and 5. By Partial Judgment entered on October 16, 2000, all federal claims asserted by plaintiff against Acadian were dismissed with prejudice. (Document No. 61).

In the instant motion, Fuselier contends that plaintiff's official capacity claim should be dismissed because plaintiff has failed to demonstrate that any official policy, custom or procedure caused his alleged constitutional violations. Fuselier further contends that plaintiff's individual capacity claims should be dismissed because he was not personally involved in the alleged constitutional deprivations nor has he implemented any inadequate policy, custom or procedure which caused the alleged constitutional deprivation. Deputies Savoy, Scott and Clay assert that they are not individually liable for any alleged deprivation of due process because Nowell's arrest was based upon probable cause, because he voluntarily committed himself to Vermillion Hospital, and as a result of his never being jailed or prosecuted he cannot claim deprivation of any legal procedure or hearing. Savoy, Scott and Clay also contend that Nowell's seizure and arrest were based on probable cause and therefore, he

---

**1.** Local Rule 7.5W of the Uniform District Court Rules provides that opposition shall be filed within 15 days after service of the motion.

cannot prevail on his claims of unlawful seizure or false arrest or imprisonment. Savoy and Scott assert that they cannot be liable for the alleged use of excessive force as they were not present at the scene of the alleged incident, inside the Acadian ambulance. Clay contends that although he was present in the ambulance, the force used upon Nowell in response to Nowell's spitting on him and the EMT was reasonable. Additionally, he contends that Nowell is unable to sustain his burden of demonstrating the use of force was wanton or malicious, and also that Nowell did not receive a "substantial injury". Savoy, Scott and Clay contend that Nowell has no claim for malicious prosecution because amongst other things, his arrest was based upon probable cause and there has been no egregious misuse of a legal proceeding. Finally, Savoy, Scott and Clay contend that Nowell has no proof of his conclusory allegations that falsified documents were filed or that these alleged documents caused him any injury. Accordingly, these defendants request that all of Nowell's federal and state claims asserted against them should be dismissed.

Acadian contends that the sole remaining state law claims pending against it should be dismissed because under La.R.S. 40:1233 the Acadian emergency medical technicians were certified and acting pursuant to physician orders, thus, because Nowell has no expert witness he cannot sustain his burden of proof that there was any deviation from the applicable standard of care. Additionally, Acadian asserts that this action is premature as Nowell failed to seek review by a medical review panel prior to instituting the instant action.

### Standard on Motion for Summary Judgment

Fed.R.Civ.Proc. Rule 56(e) provides, in pertinent part, as follows:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Nowell has not submitted any evidence whatsoever in opposition to the Motion for Summary Judgment filed by Fuselier, Savoy, Scott and Clay, or the Motion for Summary Judgment or Alternatively Motion to Dismiss Pursuant to Rule 12(b) filed by Acadian Ambulance Service, Inc. Both motions are properly made and supported. Thus, plaintiff may not rest upon his allegations or denials in his pleadings, but rather must go beyond the pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *Celotex v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). However, metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions, and those supported by only a scintilla of evidence are insufficient. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994). Moreover, summary judgment is mandated against a party who fails to make a showing sufficient to establish an essential element of that party's case, and on which that party will bear the burden of proof at trial. *Celotex,* 106 S.Ct. at 2552. Accordingly, summary judgment with respect to the federal claims asserted against Fuselier, Savoy, Scott and Clay is appropriate in this case based on the following grounds.

### I. Sheriff Fuselier

#### Official Capacity Claims

An official capacity suit is the equivalent of a suit against the entity of

which the officer is an agent. *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Brandon v. Holt,* 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985); *Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *McMillian v. Monroe County, Ala.,* 520 U.S. 781, 784–85, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997) [2]; *Burge v. St. Tammany Parish,* 187 F.3d 452, 466 (5th Cir.1999). Thus, such a claim requires *Monell* proof of an official policy [3] or custom [4] as the cause of the constitutional deprivation. *Turner v. Houma Municipal Fire & Police Civil Service Board,* 229 F.3d 478, 483 fn. 10 (5th Cir.2000) citing *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).[5]

■ In his original complaint, plaintiff alleges that the following official policies or customs of Sheriff Fuselier, the admitted official policy maker of the St. Martin Parish Sheriff's Office: Failing to properly train [6],

2. The Supreme Court in *McMillian* explained that:

> a suit against a governmental officer "in his official capacity" is the same as a suit " 'against [the] entity of which [the] officer is an agent,' " *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (quoting *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)), and that victory in such an "official–capacity" suit "imposes liability on the entity that [the officer] represents," *Brandon v. Holt,* 469 U.S. 464, 471, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985).

*McMillian,* 520 U.S. at 785 n. 2, 117 S.Ct. 1734.

3. "An official policy, for purposes of § 1983 liability, is '[a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policymaking authority.' " *Brown v. Bryan County,* 219 F.3d 450, 457 (5th Cir.2000) quoting *Bennett v. City of Slidell,* 735 F.2d 861, 862 (5th Cir.1984) (en banc). In their motion, the defendants admit that Sheriff Fuselier is the official policy maker for the St. Martin Parish Sheriff's Office. (Document No. 75, pg. 7). Thus, the policies adopted promulgated by the Sheriff are "official" for purposes of the instant motion.

4. Courts have defined custom as a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Campbell v. City of San Antonio,* 43 F.3d 973, 977 (5th Cir.1995) citing *Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir.1984); *Matthias v. Bingley,* 906 F.2d 1047, 1054 (5th Cir.1990) (en banc). As discussed above, there is no evidence of any persistent, widespread practice for purposes of imputing official capacity liability or precluding summary judgment herein. The singular incident described herein is insufficient. See *Thompson v. Upshur County,* 245 F.3d 447, 458 (5th Cir.2001) citing *Snyder v. Trepagnier,* 142 F.3d 791, 798–99 (5th Cir.1998) and *Belt,* 828 F.2d at 304–305; *Board of the County Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

5. In *Monell,* the Court held that local governmental entities may be sued under § 1983. However, they may not be held vicariously liable under the doctrine of *respondeat superior.* Thus, a governmental entity may not be held liable merely because it employs a tortfeasor. Liability must be based upon allegedly unconstitutional conduct which "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers … [or is] visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's decision making channels." *Id.* at 690–91, 98 S.Ct. 2018.

6. In *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) the Supreme Court set forth the standard for asserting a failure to train claim articulating that "[t]he inadequacy of [a] training policy may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons

hire[7], discipline and supervise deputies, failing to make and enforce proper regulations on the use of force on arrestees[8], tolerating a pattern of police misconduct and use of excessive force by deputies, and failing to discipline employees who violate individuals' civil rights. In support of his Motion for Summary Judgment, the Sheriff submits his affidavit in which he details the department's policies on hiring, training, supervision, discipline, and use of force. Plaintiff fails to submit any evidence that these policies are in any respect inadequate, or that there is any custom or pattern of inadequate hiring, training, supervision or discipline. Moreover, the Sheriff submits Nowell's deposition testimony in which he admits that he has no knowledge of the existence of these alleged inadequacies nor any evidence in support of same. Finally, the undersigned's research fails to reveal any constitutional inadequacy with the Sheriff's policies. Accordingly, plaintiff fails to demonstrate a material issue of fact which precludes summary judgment herein with respect to the official capacity claims asserted against Sheriff Fuselier.

## Individual Capacity Claims

██ A supervisor may not be held liable on a theory of *respondeat superior.*

with whom the police come into contact." *Id.* at 388, 109 S.Ct. 1197. "[I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy makers of the City can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." However, it is not enough to establish that a particular officer was inadequately trained, or that the injury could have been avoided with more or better training. *Id.* Moreover, proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before liability may attach. *Thompson v. Upshur County*, 245 F.3d at 458 (5th Cir.2001) citing *Snyder v. Trepagnier*, 142 F.3d 791, 798–99 (5th Cir.1998) and *Belt*, 828 F.2d at 304–305. Furthermore, the inadequacy must be obvious and obviously likely to result in a constitutional violation. *Id.*

7. In *Board of the County Comm'ns of Bryan County v. Brown*, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) the Court held that a Sheriff's isolated decision to hire a deputy who had past criminal history involving violence which ultimately resulted in the use of excessive force by the employee was not sufficient to impose liability on the governmental entity because imposing such liability would be tantamount to imposing vicarious liability. Rather, the Sheriff must have necessarily concluded that the future use of force was the "plainly obvious consequence of the decision to hire the applicant" in order to establish deliberate indifference to the constitutional rights of citizens. See also *Snyder v. Trepagnier*, 142 F.3d 791, 797 (5th Cir.1998) (Trepagnier admitted to two nonviolent offenses: stealing a jacket and smoking marijuana. On this evidence, Snyder's claim that the City's screening policies were inadequate fails the *Bryan County* test: that the plaintiff's injury be the "plainly obvious consequence' of the hiring decision.").

8. The standard for use of force applicable to arrestees is set forth in *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The force must be objectively reasonable under the totality of the circumstances. *Id.* The issue is "whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting them without regard to their underlying intent or motivation ..." *Id.* Factors to consider when determining whether the force used was objectively reasonable include the severity of the crime at issue, whether the suspect posed a threat to the safety of officers or others, whether the arrestee actively resisted arrest or attempted to avoid arrest. *Graham*, 109 S.Ct. at 1872. The Sheriff's policy as set forth in his affidavit does not contravene this reasonableness standard. To the contrary, the policy incorporates the *Graham* factors.

Rather, to be liable under § 1983, a supervisory official must be personally involved in the act causing the alleged constitutional deprivation, or must have implemented a policy so deficient that the policy itself acts as a deprivation of constitutional rights. *Cronn v. Buffington,* 150 F.3d 538, 544 (5th Cir.1998); *Thompkins v. Belt,* 828 F.2d 298, 303–04 (5th Cir.1987); *Alton v. Texas A & M University,* 168 F.3d 196, 200 (5th Cir.1999).

■■■■■ A sheriff not personally involved in the acts that deprived the plaintiff of his constitutional rights is liable under § 1983 if: 1) the sheriff failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights. *Thompson v. Upshur County,* 245 F.3d 447, 458–59 (5th Cir.2001) citing *Smith v. Brenoettsy,* 158 F.3d 908, 911–12 (5th Cir. 1998), *Doe v. Taylor Independent School District,* 15 F.3d 443, 452–54 & nn. 7–8 (5th Cir.1994) (en banc) (adopting the *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 1205 n. 10, 103 L.Ed.2d 412 (1989), standard of municipal liability for supervisory liability, thus omitting gross negligence from the *Hinshaw* test), and *Hinshaw v. Doffer,* 785 F.2d 1260, 1263 (5th Cir.1986). Proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference. *Id.* citing *Snyder v. Trepagnier,* 142 F.3d 791, 798–99 (5th Cir.1998) and *Belt,* 828 F.2d at 304–305. The plaintiff must generally demonstrate at least a pattern of similar violations. *Id.* citing *Snyder,* 142 F.3d at 798. Furthermore, the inadequacy of training must be obvious and obviously likely to result in a constitutional violation. *Id.* citing *City of Canton,* 109 S.Ct. at 1205 n. 10 (1989) and *Snyder,* 142 F.3d at 799.

■■■■ In the instant matter, the Sheriff submits his affidavit in which he states that he was not present at the scene of plaintiff's arrest, nor was he personally involved in the transfer of plaintiff to the University Medical Center. These statements are uncontradicted.

Moreover, in light of the Sheriff's policies at issue herein which, as set forth above, have not been shown to be constitutionally inadequate, plaintiff has not demonstrated the Sheriff was deliberately indifferent. Accordingly, there is no material issue of fact precluding summary judgment herein with respect to the individual capacity claims asserted against Sheriff Fuselier.

## II. Unreasonable Seizure/False Arrest and Imprisonment

■■■■ Plaintiff has a right to be free from illegal arrest; however, whether an arrest is illegal hinges on the absence of probable cause. Thus, if plaintiff cannot show an absence of probable cause, he fails to state a violation of a constitutional right. *Sorenson v. Ferrie,* 134 F.3d 325, 328 (5th Cir.1998) citing *Baker v. McCollan,* 443 U.S. 137, 144–45, 99 S.Ct. 2689, 2694–95, 61 L.Ed.2d 433 (1979). The "constitutional torts" of unreasonable seizure and false imprisonment also require a showing of no probable cause. *Brown v. Lyford,* 243 F.3d 185, 189–90 (5th Cir.2001) citing *Mendenhall v. Riser,* 213 F.3d 226, 230 (5th Cir.2000).

■■■■ In the instant suit, plaintiff admits in his deposition that he pointed a .32 caliber pistol at the sheriff's deputies twice in the hopes that the deputies would shoot him, and that he was ultimately charged

with aggravated assault on a "police officer 'by fire'." Under Louisiana law, aggravated assault on a peace officer with a firearm requires that a peace officer be placed in reasonable apprehension of receiving a battery from a firearm. La.R.S. 14:37.2. Obviously, the officers had probable cause to arrest plaintiff on those charges. Moreover, plaintiff has failed to submit any countervailing affidavits or other evidence demonstrating that probable cause was absent. Accordingly, plaintiff has no claim for unreasonable seizure, false arrest or false imprisonment and summary judgment is properly granted with respect to these claims.

▮▮▮▮▮ Additionally, summary judgment is proper with respect to plaintiff's claim of unreasonable seizure [9] because the seizure was not conducted in an extraordinary manner. Generally, when probable cause to arrest exists, "the government's interests in enforcing its laws outweigh the suspect's privacy interest and arrest of the suspect is reasonable" under the Fourth Amendment. *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir.2001) citing *Atwater v. City of Lago*, 195 F.3d 242, 244 (5th Cir.1999) (cert. granted). Courts "deviate from this principle . . . only when an arrest is 'conducted in an extraordinary manner, unusually harmful to an individual's privacy or even physical interests." *Id.* (quoting *Whren v. United States*, 517 U.S. 806, 817–18, 116 S.Ct. 1769, 1776–77, 135 L.Ed.2d 89 (1996)).

In the instant case, medical records, affidavits and deposition testimony submitted in support of the defendants' motion for summary judgment reveal that plaintiff's arrest was not conducted in an extraordinary manner. It is uncontradicted that Nowell brandished a handgun threatening suicide by placing the gun to his head and inside his mouth. On more than one occasion he pointed the gun at the deputies in an admitted attempt to have the deputies shoot him, thus, accomplishing his suicidal goal. The standoff between plaintiff and the officers continued for over one half hour before deputies were able to disarm Nowell and physically wrestle him to the ground. On the date of this incident, plaintiff admittedly had consumed a case of beer. Moreover, the medical records indicate that plaintiff was so agitated that the EMT was unable to take his vitals, and also that Nowell was "aggravated" and "violent", thus, requiring stretcher straps during transport. Plaintiff fails to submit any affidavits or other evidence in support of his claim of unreasonable seizure. Accordingly, because plaintiff's arrest was not conducted in an extraordinary manner, summary judgment on the claim of unreasonable seizure is proper.

### III. Malicious Prosecution

▮▮▮▮ To date, the Fifth Circuit accepts that malicious prosecution can deprive a person of constitutional rights. This "constitutional tort" has seven elements:

1. criminal action commenced against the plaintiffs;

2. that the prosecution was caused by the defendants or with their aid;

3. that the action terminated in the plaintiffs' favor;

4. that the plaintiffs were innocent;

5. that the defendants acted without probable cause;

6. that the defendants acted with malice; and

7. that the criminal proceeding damaged the plaintiffs.

Plaintiff's claim for use of excessive force is addressed below.

---

**9.** The instant analysis focuses on the plaintiff's seizure in connection with his arrest.

*Brown v. Lyford,* 243 F.3d at 189 (5th Cir.2001) citing *Kerr v. Lyford,* 171 F.3d 330, 340 (5th Cir.1999). As discussed above, because Nowell's arrest was made upon probable cause, he has no claim for malicious prosecution. Summary judgment is properly granted with respect to this claim.

## IV. Filing of False Police Reports

In his complaint, plaintiff alleges that the "defendant officers further made and filed false official documents, in the form of false police reports, in an attempt to cover up their wrongdoing, the negligent acts of the officers and shield themselves from civil and criminal liability and internal discipline." Plaintiff does not allege what report he claims was false or how the alleged filing caused him damage. Moreover, Nowell fails to identify any federal rights in jeopardy, nor has he indicated how the alleged filing of these reports deprived him of any constitutional right.

 The mere existence of falsified police reports do not in and of themselves violate any of Nowell's federal rights. *Landrigan v. City of Warwick,* 628 F.2d 736, 745 (1st Cir.1980); *Comfort v. Town of Pittsfield,* 924 F.Supp. 1219, 1230 (D.Me.1996); *White v. Tamlyn,* 961 F.Supp. 1047, 1056–57 citing *Comfort* and *Bailey v. Tricolla,* 1995 WL 548714, at *5 (E.D.N.Y., Sept. 12, 1995); See also *Bush v. City of Philadelphia,* 1999 WL 554585 (E.D.Pa.1999) (and cases cited therein).

In *Landrigan,* the First Circuit held that "the mere filing of false police reports, by themselves without more, [does] not create a right of action in damages under 42 U.S.C. § 1983." *Id.* at 744–45. The court reasoned that for the purpose of recovering damages, the existence of a false report sitting in a police station filing cabinet does not itself deprive a person of a constitutional or statutory right. *Id.* To the contrary, falsified police reports are only actionable under § 1983 if those reports result in the deprivation of life, liberty or property. *Id.* If action is taken on the basis of falsified reports a plaintiff may file suit. *Id.*

Here, however, as in *Landrigan,* the police reports are mainly relevant to the extent they resulted in an allegedly false charge. *Id.* However, as discussed above, probable cause existed to charge plaintiff with aggravated assault on a peace officer with a firearm. Accordingly, it has not been demonstrated that any police report charging Nowell with that crime was false. Moreover, in the absence of more specific pleadings, it is not clear that the alleged false reports alone resulted in damages to Nowell cognizable under § 1983, beyond those arising out of his Fourth Amendment claims. Finally, in support of summary judgment herein, the defendants submit the deposition testimony of Nowell wherein he admits that he had no personal knowledge of any falsified documents, nor has Nowell produced any proof to support his conclusory allegations. For these reasons, summary judgment with respect to this claim is proper.

## V. Deprivation of Due Process

 In his complaint, Nowell conclusorily states that he was deprived of his liberty without due process. To the extent Nowell's complaint focuses on his being transported to the hospital, that complaint is without merit.[10] It was entirely

---

10. "After the initial incidents of a seizure have concluded and an individual is being detained by police officials but has yet to be booked, an arrestee's right to medical attention, like that of a pretrial detainee, derives from the Fourteenth Amendment." *Nerren,* 86 F.3d at 473. Thus, an arrestee's complaint for such a denial is evaluated under the same

appropriate for the officers to transport Nowell to the hospital for immediate psychiatric attention given his admittedly suicidal state. Indeed, the deputies had a duty to render reasonable medical care and hence, would have been subject to liability had they not taken that step. See *Nerren v. Livingston Police*, 86 F.3d 469 (5th Cir.1996) (holding that arrestees, like pretrial detainees are entitled to reasonable medical care unless the failure to supply that care is reasonably related to a legitimate governmental objective.). To the extent that Nowell complains about his subsequent commitment to the Vermillion Hospital for Psychiatric and Addictive Medicine, the defendants have submitted medical records demonstrating that Nowell voluntarily committed himself for treatment. Hence, the officers did not involuntarily deprive Nowell of his liberty interest. With respect to procedural due process, Nowell has not alleged that he was deprived of any hearing or legal proceeding, nor has he submitted any evidence or affidavits indicating the need for same. To the contrary, under the circumstances presented herein, the undersigned is unable to discover that any such hearing or proceeding was necessary. Accordingly, in the absence of any evidence or affidavits in opposition to summary judgment

herein, the undersigned concludes that no issue of fact remains with respect to plaintiff's due process claim. Thus, summary judgment is appropriate with respect to Nowell's due process claim.

## VI. Excessive Force

### Deputies Savoy and Scott

 In his complaint, plaintiff alleges that "while in the ambulance, Mr. Nowell was beaten until he was unconscious." He further asserts that Savoy and Scott [11] "observed the unlawful assault and battery upon the plaintiff through the use of excessive force" and that the "defendant officers' allowing plaintiff to be severely assaulted and battered was done in deliberate indifference and disregard of his rights . . . ." Defendants Savoy and Scott have submitted their affidavits wherein they each state under oath that they never struck Mr. Nowell, did not observe anyone else strike Nowell, and did not enter the Acadian Ambulance which transported Mr. Nowell to the hospital. Additionally, the defendants have submitted deposition testimony of Nowell, Ronald J. Leger, the EMT inside the ambulance, and Deputy Clay who accompanied Mr. Nowell to the hospital. That testimony

standards applicable to substantive due process claims of pretrial detainees. *Nerren*, 86 F.3d at 472 citing *Fields v. City of South Houston, Texas*, 922 F.2d 1183 (5th Cir.1991) (applying pretrial detainee standards to an arrestee's claim that arresting officer denied arrestee medical attention). In so finding, the Fifth Circuit noted that this holding leaves "unmolested an arrestee's additional and specific Fourth Amendment protections to be free from an unreasonable arrest and excessive force at the time of arrest" as stated in *Valencia v. Wiggins*, 981 F.2d 1440, 1443 (5th Cir.1993) ("As the Fourth Amendment protects against unreasonable 'seizures,' it seems primarily directed to the initial act of restraining an individual's liberty, such as an investigatory stop or arrest."). "An arrestee's

Fourteenth Amendment due process rights are in addition to and overlap with that protection. We simply recognize that arrestees as a subset of pretrial detainees have substantive due process rights under the Fourteenth Amendment which are, as Judge Friendly said, 'quite apart from any specific of the Bill of Rights.' " *Nerren*, 86 F.3d at 473 fn. 20 citing *Johnson v. Glick*, 481 F.2d 1028, 1032 (2d Cir.1972).

11. Plaintiff refers to these defendants as "Deputy Chuck" and "Deputy Gerald". However, in their affidavits submitted in support of this motion, they identify themselves using their proper names, Charles Scott and Gerald Savoy, respectively.

reveals that the alleged use of excessive force occurred while Mr. Nowell was inside the ambulance on route to the hospital, and that only Nowell, Deputy Clay and EMT Leger were present. Plaintiff has failed to submit any evidence contradicting Savoy's and Scott's testimony that they were not present inside the ambulance when the alleged use of excessive force occurred, nor has he presented any evidence which would indicate that Savoy or Scott observed any excessive use of force prior to Nowell's being placed in the ambulance or any evidence indicating that they were in any way placed on notice that the alleged use of force would occur during transport.

■ An officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under § 1983 under a theory of bystander liability. *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir.1995) citing *Harris v. Chanclor*, 537 F.2d 203, 205–06 (5th Cir.1976), *Smith v. Dooley*, 591 F.Supp. 1157, 1168 (W.D.La.1984), aff'd, 778 F.2d 788 (5th Cir.1985), and *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 205 n. 3 (1st Cir.1990), cert. denied, 500 U.S. 956, 111 S.Ct. 2266, 114 L.Ed.2d 718 (1991).[12] Thus, the officer must have had a reasonable opportunity to realize the excessive nature of the force and a reasonable opportunity to intervene to stop it. Indeed, under *Hale*, the Fifth Circuit has articulated that liability attaches only if "[the plaintiff] prove[s] that [the bystanding officer] was present at the scene ... but did not take reasonable measures to

prevent [another officer] from using excessive force." *Snyder v. Trepagnier*, 142 F.3d 791, 801 at fn. 11 (5th Cir.1998) citing *Hale*. Accordingly, in *Snyder*, the court found no error in dismissing the plaintiff's claim against a bystanding officer "[i]n light of [the plaintiff's] admission that he did not know whether [the bystanding officer] was in the area when he was shot, and the absence of probative evidence suggesting otherwise . . . ." *Id.*

Accordingly, summary judgment is properly granted to Savoy and Scott with respect to plaintiff's claim for use of excessive force as there is simply no evidence supporting plaintiff's claim that either defendant used excessive force on plaintiff, observed the complained use of excessive force or allowed plaintiff to be subjected to the use of excessive force, nor is there any evidence that Savoy or Scott had any opportunity to take steps to prevent the alleged use of force, or to intervene to stop it.

**Deputy Clay**

■ Plaintiff complains of events which occurred in connection with his arrest while he was still in custody of the arresting officers, prior to any processing by the sheriff's department, at a time when he was not incarcerated awaiting trial, much less awaiting trial for a significant period of time. Thus, he enjoys the protections of the Fourth as opposed to the Fourteenth Amendment. *Gutierrez v. City of San Antonio*, 139 F.3d 441, 452 (5th Cir. 1998) citing *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), *Brothers v. Klevenhagen*, 28 F.3d

12. See also *Anderson v. Branen*, 17 F.3d 552, 556 (2nd Cir.1994) citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir.1988) (An officer who fails to intervene to protect citizens from the use of excessive force by other officers is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know that excessive force is being used and the officer had a realistic opportunity to intervene to prevent the harm from occurring.) and *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir.1994) (same).

452, 455–56 (5th Cir.1994) and *Valencia v. Wiggins*, 981 F.2d 1440, 1445 (5th Cir. 1993).

■■■ The standard for use of force applicable to arrestees is set forth in *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The force must be objectively reasonable under the totality of the circumstances. *Graham*, 109 S.Ct. at 1873. The issue is "whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting them without regard to their underlying intent or motivation . . ." *Id.* at 1872. Factors to consider when determining whether the force used was objectively reasonable include the severity of the crime at issue, whether the suspect posed a threat to the safety of officers or others, and whether the arrestee actively resisted arrest or attempted to avoid arrest. *Id.* *Graham* instructs courts not engage in second-guessing officers about the amount of force that is necessary in a particular situation, recognizing that officers have to make split second, on the scene decisions while confronted with a violent individuals. *Id.; Wagner v. Bay City Texas*, 227 F.3d 316, 321 (5th Cir.2000) citing *Graham*, 490 U.S. at 396–97, 109 S.Ct. 1865. In gauging the objective reasonableness of the force, a court must balance the amount of force used against the need for that force. *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996).

■■■ The Fifth Circuit has held that in order to succeed on an excessive force claim, a plaintiff bears the burden of showing (1) an injury (2) which resulted directly and only from the use of force that was excessive to the need and (3) the force used was objectively unreasonable. *Glenn*

*v. City of Tyler*, 242 F.3d 307, 314 (5th Cir.2001) citing *Goodson*, 202 F.3d at 740 (quoting *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir.1999)). Although a showing of "significant injury" is no longer required in the context of an excessive force claim, the Fifth Circuit does require a plaintiff asserting an excessive force claim to show that he sustained an injury which is "more than a *de minimis* injury" evaluated in the context in which the force was deployed. *Glenn*, 242 F.3d at 314 citing *Williams*, 180 F.3d at 703 quoting *Jackson v. R.E. Culbertson*, 984 F.2d 699, 700 (5th Cir.1993); See also *Gomez v. Chandler*, 163 F.3d 921 (5th Cir.1999); *Siglar v. Hightower*, 112 F.3d 191 (5th Cir.1997). Indeed, the extent of injury suffered by a plaintiff is one factor that may suggest whether the use of force was excessive in a particular situation. *Ikerd*, 101 F.3d at 434 citing *Hudson v. McMillian*, 112 S.Ct. at 999.

■■■ In his complaint herein, Nowell contends that while in the Acadian Ambulance he was beaten until unconscious.[13] He further claims to have remained unconscious until his arrival at the hospital. However, he admits in his deposition he does not know who allegedly beat him. He also admits to have consumed a case of beer on the date in question.

Deputy Clay has submitted deposition excerpts of Ronald J. Leger, the EMT who accompanied plaintiff to the hospital, Nowell and himself. Clay has also submitted medical record of Acadian Ambulance, University Medical Center and Vermillion Hospital for Psychiatric & Addictive Medicine. These documents reveal that on the date in question, Nowell had consumed a case of beer. While brandishing a gun threatening suicide by admittedly placing

---

**13.** Nowell's complaint does not allege that excessive force was used in connection with the officers' disarming him. Rather he com-
plains solely of the alleged use of excessive force during his transport to the hospital.

the gun to his head and inside his mouth, he was physically wrestled from his wheelchair to the floor and the gun secured. Thereafter, he was placed prone on a stretcher and placed in an Acadian Ambulance to be transported to a hospital. The only persons present inside the ambulance during the transport were Deputy Clay and EMT Leger.

The medical records reveal that during transport Nowell appeared to be intoxicated and was "agitated" and "violent". Indeed, he was so agitated that the EMT was unable to take his vitals and stretcher straps were required during transport. The medical records also reveal that on physical examination Dr. Cain found "abrasions inside mouth and ecchymoses R. upper eyelid." The records fail to demonstrate that Nowell was unconscious for any period of time. Additionally, there is no indication on any record that Nowell ever gave of a history of being beaten while in the ambulance.

·Leger testified that initially, Nowell was lying prone on the stretcher with his head turned to the right. It is undisputed that while inside the ambulance, Nowell spat at Clay two to three times, one such occasion hitting Clay in the face. Clay indicated that he believed that he and Leger were endangered because of the risk of infection associated with such behavior. Clay testified that he told Nowell to stop spitting, but that "verbal commands is out because he would not listen to verbal commands." Accordingly, in response to being spat at and upon, he admittedly put his knee in Nowell's right facial area and then turned his head in the opposite direction, to the left. Clay's knee remained on Nowell's face for approximately 45 seconds to a minute. After removing his knee, Clay did not see any damage to Nowell. He denied ever kicking or hitting Nowell and also denied seeing anyone else inside the ambulance kick or hit Nowell.

Leger's testimony is consistent with Clay's version of events. He testified that Clay put his knee on Nowell's face for less than a minute and told him to stop spitting. Leger also testified that after the knee was removed, he visually examined Nowell's face and did not see anything abnormal. Moreover, he testified that Nowell was conscious the entire trip and that he did not see any deputy beat or kick Nowell in any fashion.

Plaintiff has not presented any contradictory affidavits or any evidence whatsoever to refute the evidence presented by Clay in support of his motion for summary judgment. Thus, he has failed to present a material issue of fact establishing that the force used herein was excessive to the need or that it was in any way objectively unreasonable. To the contrary, examination of the record and evidence submitted in support of summary judgment herein reveals that under the totality of the circumstances, the force used by Clay in response to Nowell's spitting at and on him was not objectively unreasonable or excessive to the need.

Moreover, considering the totality of the facts and circumstances confronting Deputy Clay, balancing the amount of force used against the need for that force, it is clear that the force used by Clay was not excessive to the need, nor was it objectively unreasonable. Nowell was under arrest for a serious crime, aggravated assault on a peace officer with a firearm. He was by all accounts resisting and belligerent as he was admittedly intoxicated, agitated and spitting at Clay. Moreover, Nowell's spitting placed both Clay and Leger in danger of contracting disease. Finally, the record demonstrates that Nowell was not responsive to verbal commands, thus necessitating physical intervention. Under these

circumstances, Clay's use of his knee in Nowell's facial area to turn Nowell's head in the opposite direction was appropriate.

Although in his pleadings to this court Nowell claims to have been beaten until unconscious, that allegation is simply not supported by the record herein. To the contrary, the medical records submitted by Clay in support of summary judgment herein demonstrate only abrasions on the inside of plaintiff's mouth and ecchymoses or a bruise in the area of the right eye. These injuries are not consistent with the severe and debilitating beating which plaintiff claims to have suffered. To the contrary, the abrasions and bruise are consistent with the application of force as described by Deputy Clay and EMT Leger. Moreover, there is no indication that plaintiff was unconscious or that he ever gave a history of having been beaten to any of the health care providers on the night in question or during the one week thereafter when he was voluntarily committed for psychiatric treatment.[14] Finally, after removing his knee from Nowell's facial area neither Clay nor Leger saw anything abnormal. In the absence of any evidence to the contrary in opposition to summary judgment herein, the undersigned cannot find an issue of material fact with respect to Nowell's excessive force claim.

 Finally, accepting the injuries as noted in the medical records, abrasions inside Nowell's mouth and a bruise in the area of the right eye, in the context employed, fail to rise to the level of constitutional significance. To the contrary, such injuries, even if sustained as a result of force applied by Clay, more appropriately fall into the *de minimis* range of imposi-

tion.[15] See *Siglar v. Hightower*, 112 F.3d 191, 193–94 (5th Cir.1997) (finding the plaintiff's alleged injury, a bruised ear lasting for three days requiring no medical treatment suffered as a result of an unprovocated twisting of plaintiff's ear, was *de minimis* ).

### VII. State Law Claims

All federal law claims asserted against Acadian have been previously dismissed. Further, for the reasons assigned above, all federal claims asserted against Sheriff Fuselier, and Deputies Clay, Savoy and Scott will be dismissed by judgment entered this date. Accordingly, no federal question remains before this court.

 A district court may decline to exercise supplemental jurisdiction if the court has dismissed all claims over which it had pendent jurisdiction. 28 U.S.C. § 1367(c)(3). Indeed, when a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims. *Bass v. Parkwood Hospital*, 180 F.3d 234, 246 (5th Cir.1999) citing *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir.1989). However, the dismissal should be without prejudice. *Id.* Dismissal is particularly appropriate when the remaining state law questions present difficult, novel or complex state law issues. *Parker & Parsley Petroleum v. Dresser Industries*, 972 F.2d 580, 589 (5th Cir.1992). The questions of state law presented by Acadian clearly fall within this category. Moreover, this matter has been pending for less than one year. Finally, Acadian previously requested that this court decline supplemental jurisdiction under § 1367 in it's Motion to Dismiss. (Document Nos. 38 and 12).

---

**14.** Additionally, those injuries may well have been self inflicted as a result of Nowell's placing the gun inside his mouth, or could have occurred as a result of Nowell's being physi-

cally wrestled out of his wheel chair in order to disarm him.

**15.** See fn. 14, *supra.*

The request was denied at that time because federal law claims were still pending against the law enforcement defendants. (Document Nos. 60 and 61). That is no longer the case. Thus, the undersigned declines supplemental jurisdiction over plaintiff's state law claims asserted against Acadian, Fuselier, Savoy, Scott and Clay. Those claims shall be dismissed without prejudice. Hence, the Motion for Summary Judgment filed by Acadian is moot.